## MARTIN ANDREWS

*v.*

## THE PEOPLE OF THE STATE OF ILLINOIS.

1. TAXES — *law making report of collector prima facie evidence of taxes due, not unconstitutional.* A statute (act of 1873,) making the collector's return, in writing, to the sheriff or county treasurer, of the taxes levied by a town or city, due and unpaid, under oath, "*prima facie* evidence that all the requirements of the law have been complied with in the assessing and levying the taxes therein returned as unpaid, are due and unpaid," is not liable to the constitutional objection that it gives the collector judicial power to determine the question of delinquency, as his report is only made *prima facie* evidence of that fact.

2. SAME — *impeaching collector's return.* Where the statute required the collector, in case of loss of the records, to make his return of delinquent taxes for the year or years before such loss " from the best information that he can óbtain," it was *held* that the collector was made the sole judge of the sources and sufficiency of the information ; and that, on an application for judgment, his report could not be impeached, by showing that he did not, in fact, make his report from the best information he could obtain, and that he did not know what he returned to be true. Proof, however, that his return was not true would be proper.

3. SAME — *pendency of prior application for judgment a bar to second one.* The pendency of an application for judgment against land for the taxes of a prior year is a good defense against the rendition of judgment for the same taxes on a second application. The statute prescribing that the causes of objection to the rendering of judgment shall be specified in writing, embraces every defense, and the objector is, therefore, not bound to plead the pendency of the former suit in abatement.

4. STATUTE — *when it repeals prior laws by implication.* A statute which · covers all the grounds of prior ones on the same subject, and revises the whole law on the given subject, necessarily works a repeal of all prior conflicting laws, whether such conflict be found in the provisions of general laws or those of special charters.

5. SAME — *act construed and held repealed.* The act of March 22, 1872, was intended to supply defects in the charters of incorporated cities and towns in respect to the collection of taxes for corporate purposes, and enable the collection of taxes in counties not under township organization, and was not intended as a permanent provision, but was designed to cease as soon thereafter as a general law on the subject of the collection of revenue

should be passed and take effect. Such act, therefore, ceased to be operative on July 1, 1872, when the act of March 30, 1872, took effect.

WRIT OF ERROR to the County Court of Cook county; the Hon. MARTIN M. WALLACE, Judge, presiding.

Messrs. SPAFFORD, PICHER, McDAID & WILSON, for the plaintiff in error.

Mr. T. LYLE DICKEY, and Mr. FRANCIS ADAMS, for the defendant in error.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

This writ of error is prosecuted to reverse a judgment of the county court of Cook county, ordering the sale of certain lands and lots, for taxes levied by the city of Chicago for the years 1869, 1870, 1871 and 1872. The judgment was rendered at the September term, 1873, of the court, and the application therefor is claimed to have been made under the provisions of " An act in regard to the assessment and collection of taxes in incorporated cities, towns and villages, for the year 1872, and prior years." Laws of 1873, page 38.

The report or return made by the city collector to the county collector contains a list of the real estate upon which the municipal taxes are due and unpaid, together with the amount of such taxes, for the years prior to 1872, for which judgment was rendered, as well as for that year; and the collector certifies therein, that the return as to the real estate upon which the taxes assessed by authority of the city for the years 1869 and 1870, remain due and unpaid thereon, from the best information he could obtain. The return is sworn to in proper form.

It is argued, by the plaintiff in error, that this return is insufficient.

The third section of the act under which the proceedings were had provides: " The amount of any tax heretofore assessed or due on any real estate for any prior year or years, and remaining unpaid for any cause whatever, together with a

list of the real estate upon which the same shall have been levied, may be returned to the sheriff or county treasurer by the collector making the return provided in section 2 hereof, at the same time he makes such return; and where any rolls or warrants for the collection of any such taxes for any prior year or years shall have been destroyed, by fire or otherwise, such collector shall make his return as to the said real estate upon which such taxes assessed for such prior year or years remain unpaid, and the taxes unpaid thereon, from the best information that he can obtain; and all the provisions of this act, relating to the taxes mentioned in said section 2, the return and the collection thereof, shall apply to the taxes authorized to be returned by this section;" and it is further provided in the fifth section of the same act, that " the statement in writing (or return) made to any county treasurer or sheriff as county collector, under this act, shall, on the application for judgment and order of sale, be *prima facie* evidence that all the requirements of the law have been complied with in the assessing and levying the taxes therein returned as unpaid, are due and unpaid."

The return seems, in this respect, to conform to the requirements of the third section, and unless the section itself is liable to the objection of unconstitutionality, the return must have the effect which is given it by the fifth section. That objection, however, is urged on the ground that a purely ministerial officer is, by the section, invested with judicial powers.

The report of the collector as to the delinquency of the property is not conclusive of that fact. The owner is deprived of no right by the report. He is still entitled to have his property free from any lien or judgment for taxes or assessments, where he has not been delinquent in the payment of taxes or assessments. The burden is, however, changed from the plaintiff, where it ordinarily rests to affirmatively prove delinquency, and thrown upon the defendant to disprove it. We perceive no constitutional objection to this. Although the collector, in ascertaining what to report on the question of delinquency, must

exercise judgment, yet, inasmuch as no right of the tax payer is adjudicated thereby, the act is simply ministerial. If the *fact* of delinquency, instead of merely *prima facie* evidence thereof, were to be thus established, the case would be different, and the section would, doubtless, be obnoxious to the objection urged. See *Flournoy* v. *Jeffersonville*, 17 Ind. 173, *et seq.; Betts* v. *Duinon*, 3 Conn. 107; *Crane* v. *Camp*, 12 ib. 463; *N. A. & R. R. Co.* v. *Connelly*, 7 Ind. 32.

Plaintiff in error, upon the hearing, offered to introduce evidence for the purpose of showing that the city collector did not, in fact, make his return from the best information he could obtain as to the taxes reported delinquent for the years 1869 and 1870, but the court refused to hear the evidence, and this, it is claimed, was error.

In directing that the collector should make his return from " the best information he could obtain," it is plain that he was intended by the statute to be the sole judge of the sources and sufficiency of the information ; and we must suppose that the guaranty afforded by his official responsibility was deemed by the legislature sufficient to secure, in this respect, all the fidelity and accuracy necessary. We are, therefore, of opinion that the court properly excluded inquiry as to the sources and character of the collector's information. As his return was but *prima facie* evidence of the facts stated, it might have been impeached by showing that they were untrue, but not by showing that the collector did not know what he returned to be true. That, in our opinion, would have been an immaterial inquiry.

One of the objections urged against the rendering of judgment in the court below, as to the taxes for the year 1871, and insisted on here, is, that there was a prior proceeding of the same kind, pending and undisposed of, for the collection of those taxes. The answer insisted upon to this objection is, that the prior proceeding should have been specially pleaded in abatement, which was not done.

It is provided in the fifth section of the act, before referred

to, that the county court, on application for judgment, " shall have like powers, and like proceedings may be had, as near as may be, as by then existing laws shall be provided to be had on application for judgment and order of sale for State and county taxes." And the one hundred and ninetieth section of the general revenue law, in force July 1st, 1872, in prescribing the mode of procedure in such cases, says : " The court shall examine said list (the delinquent list) and if any defense (specifying, in writing, the particular cause of objection) be offered by any person interested in any of said lands or lots, to the entry of judgment against the same, the court shall hear and determine the *matter in a summary manner, without pleadings,* and shall pronounce judgment, as the right of the case may be." This, in our opinion, rendered it unnecessary that any plea in abatement should be filed. The particular cause of objection was specified in writing, and the language of the statute embraces every defense that could have been interposed to defeat the judgment. The seventh section of the act, under which the proceedings were pending, authorizes a personal action, either in debt or assumpsit, to be brought for the recovery of the taxes ; and in the eighth section it is declared such personal action shall be cumulative to the remedy afforded by the present form of proceeding ; but we have been unable to find any statutory authority for resorting, at the same time, to two or more proceedings of the same kind for the collection of the same tax. It is unjust and oppressive to the tax payer, and contrary to the principles of the common law, that he shall be subjected to the annoyance and expense of defending against a multiplicity of proceedings of the same kind for the collection of a single tax ; and in the absence of an express enactment to that effect, we do not feel authorized to hold that it can be allowed. We think the objection well taken, and that the court erred in rendering judgment for the taxes of the year 1871.

It is claimed by the plaintiff in error, and conceded by the counsel for the city, that the taxes for the year 1872 were levied

by the city upon an assessed valuation, made by persons assuming to act as city assessors, after the 1st day of July, 1872, and that the tax was not levied in conformity with the provisions of the general revenue law in force July 1st, 1872. This presents the question whether that law was a repeal of so much of the different city charters as provided a different method for the collection of city taxes.

In *Hills* v. *Chicago*, 60 Ill. 87, it was held that section 4 of article 9 of the constitution, which directs that " the general assembly shall provide, in all cases where it may be necessary to sell real estate for the non-payment of taxes or special assessments for State, county, municipal or other purposes, that a return of such unpaid taxes or assessments shall be made to some general officer of the county," etc., abrogated such portions of the charter of the city of Chicago as authorized a return of unpaid taxes and assessments to be made to the city collector, and an order of sale of real estate to be made by him.

It was, therefore, necessary, before the payment of city taxes could be enforced by sale of real estate in the city of Chicago, that its charter should be so amended as to conform to this section of the constitution ; and this could not be done by a local or special law. § 22, art. 4 of the Const.

An act to accomplish this purpose was passed by the general assembly, and approved on the 22d day of March, 1872. It applied to all cases in which application had theretofore been made for judgment, and to proceedings commenced under its provisions, but it was expressly declared in the emergency clause, in the fourteenth section, in these words : " This act shall take effect and be in force from and after its passage, and until the object intended by this act can be obtained under a general revenue law, which may hereafter be enacted by the general assembly, after which this act shall be of no effect," etc. This places it beyond doubt, first, that the provisions of this act were designed to supply a temporary necessity ; and, secondly, that it was intended to supersede it by appropriate pro-

visions in the general revenue law thereafter to be enacted. It is not claimed, nor can it be, in our opinion, that the provisions of this act, with the exception of the sixth section (which we have held in *Lucy Smith* v. *The People, ante,* p. 36, does not apply to the city of Chicago), did not apply to the city of Chicago. The title of the act and the preamble to the emergency clause conclusively show that it was intended to apply to all cities in whose charters there were no provisions requiring returns to be made to the county treasurer or sheriff, as provided by that act, preliminary to an application for sale of real estate for municipal taxes. The title is, " An act to provide for the collection of revenue, and for the sale of real estate for non-payment of taxes or special assessments for State, county, *municipal,* or other purposes ; " and the preamble to the emergency clause recites, " Whereas, there is now no general officer in many cities, and in counties not under township organization, having authority to receive State and county taxes, to whom a return of unpaid taxes and municipal and special assessments can be made, or who is authorized to sell real estate for the non-payment of such taxes and assessments, whereby an emergency has arisen, requiring this act to take effect immediately," etc.

The general revenue law was passed by the same general assembly, and approved eight days afterwards — March 30, 1872, and went into effect, by force of the constitution, on the first day of July following. It provides in the one hundred and twenty-second section, " That the proper authorities of towns, townships, districts and *incorporated cities,* towns and villages, shall annually, on or before the second Tuesday in August, certify to the county clerk the several amounts which they require to be raised by taxation." Other sections of the law direct the making of collectors' books, with proper columns, the manner of extending the different taxes, etc. ; and sections 127 and 128 are as follows :

§ 127. " The said clerks (county) shall estimate and deter-

mine the rate per cent upon the proper valuation of property in the respective towns, townships, districts and *incorporated cities*, towns and villages in their counties, that will produce, within the proper divisions of such counties, not less than the net amount of the several sums that shall be required by the county board, or certified to them according to law."

§ 128. " All State and county taxes shall be extended by the respective county clerks upon the property in their counties, upon the valuation produced by the equalization and assessment of property by the State Board of Equalization. Town, district, village, *city* and other taxes, shall also be extended against such assessed and equalized valuation of property within their respective jurisdictions." ·

Sections 164 and 167 of the law prescribe the duties of collectors with regard to paying over to the proper authorities of incorporated towns, *cities*, etc., the taxes collected for them respectively, and rendering accounts for the same.

We have been referred to no other statutes designed to amend the charters of cities so as to enable them to enforce sale of real estate for the payment of their taxes and special assessments, in conformity with section 4, article 9 of the constitution, and we have not been able to find any in force at or prior to the 1st day of July, 1872, with the exception of the general incorporation law, which went into effect on that day. But it applies only to such cities as should thereafter elect to incorporate under its provisions, and it is not pretended that Chicago had done so when the taxes of 1872 were levied. Moreover, that act does not even indicate a disposition on the part of the general assembly to allow different systems in different cities for the collection of municipal taxes and assessments, for it provides for their collection by substantially the same process as is provided by the general revenue law.

Inasmuch, then, as the act of the 22d of March, by its own terms, was only to remain in force until the object intended to be accomplished by it could be obtained under the general rev-

enue law, which was thereafter to be enacted, if the general revenue law in force July 1, 1872, and to whose provisions we have referred, is comprehensive enough to allow the object intended to be accomplished by that act, to be obtained, it can admit of no doubt that the provisions of the latter law superseded and abrogated those of the former. The object intended to be accomplished by the act of the 22d of March is plainly disclosed by the preamble to the emergency clause, which we have quoted. It was, to supply the omission in the charters of cities, and in counties not under township organization, of the designation of some general officer having authority to receive State and county taxes, to whom a return of unpaid taxes and municipal and special assessments could be made. The general revenue law designates such officer, and directs how all returns for State, county and municipal taxes, and municipal and special assessments shall be made to him. It covers all the ground occupied by the act of March 22d, and revises the whole law relating to the collection of taxes. This necessarily works a repeal of all prior conflicting laws, whether such conflict shall be found with the provisions of general laws, or those of special charters of cities. *Culver* v. *The Third National Bank*, 64 Ill. 528 ; *The Board of Trustees, etc.* v. *Chicago*, 14 ib. 334.

The same objection also is found in this record which was sustained in *Otis* v. *The People ex rel., etc.*, at the present term.

The judgment of the court below is reversed and the cause remanded.

*Judgment reversed.**

---

* DUNHAM *v.* PEOPLE *ex rel.*

WRIT OF ERROR to the Cook County Court.

Per CURIAM: This case is governed by *Andrews* v. *The People*, decided at the present term.

*Judgment reversed.*

Messrs. HAWES & LAWRENCE, and Mr. WM. HOPKINS, for the plaintiff in error

Mr. T. LYLE DICKEY, and Mr. FRANCIS ADAMS, for the defendant in error.