(No. 21806.—

THE PEOPLE *ex rel.* A. H. Behrens, County Collector, Appellee, *vs.* THE ALTON RAILROAD COMPANY, Appellant.

*Opinion filed April 22, 1933.*

WILLIAM L. PATTON, and MILES GRAY, for appellant.

MICHAEL F. SEYFRIT, State's Attorney, for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

To the application by the county collector of Macoupin county for judgment and order of sale, for the taxes of 1931, of the railroad of the Alton Railroad Company in that county, the railroad company filed objections going to two items of the county tax levy. The levy was for $158,-538. The items objected to were: "Pauper old claims, $19,000; county farm, salaries and supplies, $9530." The amount of tax objected to was $1338.86. The objections were overruled, judgment and order of sale were entered against the property, and the railroad company appealed.

Before July 1, 1931, the obligation of the support of paupers rested upon the county. By a statute effective on July 1, 1931, (Laws of 1931, p. 725,) the act to revise the law in relation to paupers was amended so as to transfer this obligation to the townships in counties having a population less than 500,000 and under township organization, among which is Macoupin county. The tax in question

was levied on September 8, 1931. It is argued that the statute under which the county was authorized to levy a tax for the maintenance of paupers having been repealed, the county board had no power to levy any tax for that purpose. And this is undoubtedly true. (*Andrews* v. *People,* 75 Ill. 605; *Burbank* v. *People,* 90 id. 554; *People* v. *Toledo, St. Louis and Western Railroad Co.* 249 id. 175; *People* v. *Baltimore and Ohio Southwestern Railroad Co.* 265 id. 591.) The levy for "pauper old claims," however, does not purport to be for future liabilities. The county had been liable for the support of the poor until July 1, 1931, and such liabilities, if any, as had been incurred before that date for that purpose were obligations of the county for the payment of which it was authorized to levy taxes. The burden of showing that the levy of a tax is unlawful is on the objector, and it will be presumed, in the absence of evidence to the contrary, that the levy was made for existing valid obligations of the county.

It is argued on behalf of the appellant that the amount and nature of the old claims and the names of the creditors do not appear. A levy of a tax is not required to specify each item of expenditure which may be made. It is required to state separately the several purposes for which taxes are to be raised and the amount for each purpose. It is not necessary to state in detail each payment which may be made for each purpose.

It is also argued that money could not be raised to pay past obligations by making a levy for "poor purposes," because the power to make a levy for such purposes had been taken away; that if there were any such claims the claimants should procure judgments, and a proper levy could then be made to pay the judgments. Obligations incurred on account of the support of the poor before July 1, if unpaid, were still obligations for the support of the poor which the county was authorized to pay without awaiting the recovery of a judgment against it. The purpose of paying

them continued to be a county purpose, and a levy of taxes made for such purpose was authorized by law.

The objection to the levy for "county farm, salaries and supplies" was also properly overruled. No objection was made to the form that it included more than one purpose, but the only objection was to the power of the county to make the levy. A statute was enacted in 1877 entitled, "An act to provide for the establishment and maintenance of county poor-houses in counties where the separate support of paupers has been adopted." Section 1 provides "that the county board of any county that has heretofore adopted, or may hereafter adopt the separate support of paupers may, whenever it shall see fit so to do, establish and maintain a county poor-house, and for this purpose shall have all the power given to county boards by section twenty-eight (28) of an act entitled 'An act to revise the law in relation to paupers,' of the Revised Statutes of 1874." (Cahill's Stat. 1931, par. 37, p. 2147; Smith's Stat. 1931, par. 37, p. 2170.) Other sections provide that the county board may fix the rate per day or per week that each town shall pay for the support and maintenance in such poor-house for each of their respective paupers, which shall be paid to the county agent in charge of the poor-house, or otherwise, as provided by the county board, and each town may then have its paupers supported in the poor-house by paying such rate, or may provide for them otherwise, as it shall deem best. This statute is still in force, as well as section 28 of the act of 1874, which provides that the county board of any county in which the poor are not supported by the towns shall have power to acquire a suitable tract or tracts of land upon which to erect and maintain a county poor-house and other necessary buildings in connection therewith, and for the establishing and maintaining of a farm for the employment of the poor, and to erect and maintain such buildings and establish and maintain such farm, and to make proper rules and regulations for the management of the county poor-

house and poor-farm and of the inmates of the poor-house; to appoint a keeper of the poor-house and all necessary agents and servants for the management and control of the poor-house and farm and prescribe their compensation and duties; to appoint a county physician and prescribe his compensation and duties; to appoint an agent to have the general supervision and charge of all matters in relation to the care and support of the poor and prescribe his compensation and duties; and to make all proper and necessary appropriations out of the county treasury for the purchase of land and the erection of buildings and to defray the expenses necessary in the care and support of the poor, and to cause an amount sufficient for said purposes to be levied upon the taxable property of the county and collected as other taxes.

Section 28 was enacted to enable the counties in which the poor were not supported by the towns to provide a county poor-house and county farm where all the poor of the county could be supported and employed by the county. The act of 1877 was enacted three years later, as its title indicates, to extend the powers to establish and maintain a county poor-house and county farm granted to counties in which the poor are not supported by the towns, to counties which have adopted the method of separate support of the poor by the towns. Under these acts the county boards in all counties under township organization of less than 500,000 population may own, maintain and operate a poor-house and poor-farm, and the townships are bound to relieve and support all poor and indigent persons lawfully resident within their respective territories, and they may do so by having them supported in the poor-house and paying the daily or weekly rate fixed by the county board for their support and maintenance or may provide for them otherwise, as they shall deem best. The county boards have the authority to levy taxes for the erection and maintenance of a county poor-house and farm, for the compensation of

the keeper and all necessary agents and servants for the management and control of the poor-house and farm, and for the compensation of a county physician and an agent to have the general supervision and charge of all matters in relation to the care and support of the poor. The objection to the appropriation for county farm, salaries and supplies also was therefore properly overruled.

The judgment of the county court is affirmed.

*Judgment affirmed.*