THE OTTAWA, OSWEGO AND FOX RIVER VALLEY RAILROAD COMPANY

*v.*

JACOB P. BLACK *et al.*

1. CONTRACT—*whether a purchase of stock, or subscription to stock of a railroad company.* A promise to pay a certain sum to a railroad company when a certain amount of the work of construction is done, with an agreement on the part of the company to deliver to the party, upon the payment of the money, a certificate for a like amount of its capital stock, on demand, is a subscription to the stock of the road to assist in its construction, and not a purchase of stock.

2. SUBSCRIPTIONS TO RAILROAD STOCK—*failure of consideration.* In such a case, if the company should, without any authority granted in its charter for that purpose, attempt to sell and transfer its powers to another company, such attempt would be unlawful, and would constitute no defense against the payment of the subscription.

3. The exercise of any legitimate power granted by the charter of a railroad company can never be held, however disastrous to the enterprise, to constitute a failure of consideration for a subscription to the capital stock.

4. SAME—*made with reference to the provisions of the charter.* Where a railroad company, by its charter, has power to lease its road, subscriptions to its capital stock will be regarded as having been made with reference to such power, and the exercise of it will not exonerate subscribers to the stock of the company from the payment of their subscriptions.

5. RAILROADS—*effect of lease not authorized by the charter.* If a railroad company, without any authority so to do, leases its road to another company, the lessee will only be regarded as the servant of the company owning the road, and such company will not be, by the act of leasing, discharged from its contracts or released from any of its liabilities, and a subscriber to the stock of the company owning the road, when he has paid his subscription and received his certificate of stock, will have equitable rights to be protected by the courts, and may prevent gross mismanagement of the property and misapplication of the funds of the corporation, but the mere fact of leasing, and probable or even certain loss in the earnings of the company, will constitute no defense to the payment of the subscription.

6. SAME—*relief against effect of unauthorized lease, is in equity, and not at law.* If a railroad company has power to lease its road, and, in doing so, exceeds its power, or if the lease is contrived for the purpose of defrauding the stockholders, and sacrificing their rights, or to pervert the franchises and property from their legitimate to fraudulent and illegal purposes, a court of equity will afford the requisite relief, but these are questions that can not be investigated in a court of law.

APPEAL from the Circuit Court of Kendall county; the Hon. EDWIN S. LELAND, Judge, presiding.

Messrs. ELDRIDGE & LEWIS, for the appellants.

Mr. T. LYLE DICKEY, for the appellees.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This suit was brought on the following instrument:

"YORKVILLE, October 3, 1867.

For value received, we, J. P. and F. A. Black, of the town of Kendall, county of Kendall, State of Illinois, promise to pay to the Ottawa, Oswego and Fox River Valley Railroad Company, three thousand dollars, payable when the iron for said company's railroad is laid from Wenona, in the county of Marshall, in said State, to Yorkville, in Kendall county, as follows: Twenty-five per cent. of said sum when the iron is so, as aforesaid, laid, and twenty-five per cent every three months thereafter until paid, with interest at the rate of ten per cent per annum : *Provided,* that if default be made in any payment as the same becomes due, the whole sum subscribed shall thereupon become immediately due and payable when the iron is laid, at my option. When the said sum of money is fully paid, the said Ottawa, Oswego, and Fox River Valley Railroad Company hereby agree to deliver to the subscriber hereto a certificate for a like amount of its capital stock, on demand.

W. BUSHNELL, *Pres't.*          J. P. AND F. A. BLACK.
D. F. CAMERON, *Sec.*"

Defendants filed a large number of pleas, a portion of which are not urged as presenting a sufficient defense. The theory of the defense presented by the pleas and questioned by the demurrer, is, that the consideration of the note has failed, either in whole or in part. The second plea avers that, by the amended charter of the company, they were authorized to construct a railroad from Geneva, on the Chicago and Northwestern railroad, to Wenona, on the Illinois Central railroad, in Marshall county; that the line of the road had been located by the way of Yorkville, between the two points of termination, and that the road had been completed from Wenona to Streator, a distance of thirteen miles, when the note was given; that this portion of the

road was sold to another company, and was in their hands and control, and that appellants have at no time owned a road, with the iron laid, from Wenona to Yorkville, as required by the condition of the note described in the declaration.

The sixth plea avers the power to construct the road, as recited in the second plea, its location, and its construction from Wenona to Streator, and avers that at the time the instrument was executed, the stock of the company was at par, and its chief value consisted in the connection of the road with the Illinois Central railroad at Wenona, and its connection with the Chicago and Northwestern railroad at Geneva; that in pursuance of an agreement to purchase thirty shares of the stock of the company, the note was given, with the condition therein named, when paid for, and on no other consideration. After the note was given, and without the consent of defendants, and before the iron was laid to Yorkville, to the great depreciation of the stock, the company sold that part of the road between Wenona and Streator, worth $500,000, for $10,000, and delivered the same into the possession of the purchaser, whereby the stock of the company became worthless, and so remained, and thus was of no value whatever. And, by reason of such sale, plaintiffs were unable to deliver stock in a road ironed from Wenona to Yorkville, or in a company the stock of which defendants agreed to receive.

Plea denominated " 9 a " avers the power of the company to build the road ; that it was located, and that appellees had an interest in the construction of the same, as thereby this road would become a competing line with the Chicago, Burlington and Quincy railroad, to obtain a reduction of fare and charges for passengers and freights to the markets, and at the time the instrument was made, it was important to the value of the stock of the company that a connection with the Illinois Central railroad should be continued, and that the consideration of the instrument was that the road should

be completed in a continuous line from Wenona to Geneva, on account of railroad connections thus to be formed, so as to be conducted and operated in competition with the Chicago, Burlington and Quincy Railroad Company; and that, on payment of the note, as provided therein, plaintiffs should deliver to defendants thirty shares of the stock of their company. And that the consideration had wholly failed in this: that after making the note, and before the iron was laid from Wenona to Yorkville, by the wrong of plaintiffs, and without the knowledge or consent of defendants, and for an inadequate price, and greatly to the depreciation of the stock of the company. such acts were done by the company that they became divested of all rights and interest in about thirteen miles of their road, between Wenona and Streator, and which terminated at the Illinois Central railroad, and that portion was sold and possession delivered to the purchaser. And before the iron was laid from Wenona to Yorkville, plaintiffs demised the entire road, with its appurtenances and equipments, to the Chicago, Burlington and Quincy railroad, in perpetuity, having previously executed a mortgage or trust deed thereon for $1,260,000 to secure bonds issued to obtain that sum of money, by which the lessees were authorized to use, employ, and operate the road, reserving forty per cent of the gross earnings of the road to purchase these bonds, and when so purchased to be held and owned by the lessees. Whereby the capital stock of the company had become worthless and of no value whatever, and deprived themselves of all power ever to become a competing road with the Chicago, Burlington and Quincy railroad. And that the consideration had thereby failed.

These are substantially the defenses urged and relied on to defeat a recovery on the note. And on the argument of the case, the principal point of dispute seemed to be, whether this instrument imported an agreement to purchase thirty shares of the capital stock of a road from Wenona to Yorkville as an entirety, or whether it was a subscription for thirty shares

of stock, with an agreement to pay the money to that amount to aid in the construction of the road. In other words, whether it was a subscription to the stock of the road, or was it a purchase of stock. In the case of *Hays* v. *The O., O. and F. R. V. R. R.* 61 Ill. 422, the suit was on an instrument similar in all its material features, and it was there held that it was a subscription to the stock to aid in building the road, and not a purchase of shares in the company.

It was there said: " But a sale and transfer of the powers of one company to another, without the authority of the legislature, are against public policy, and courts will do nothing which would promote the transfer, as it is in utter disregard of the duties and obligations of the company. If the sale, then, was without authority granted in the charter, it was merely an unlawful attempt to accomplish what can only be done by the legislature, and is no defense against the payment of the subscription."

"If there was power to lease, the subscription must be regarded as having been made with reference to it. If there was not, is the act of leasing such a material and fundamental alteration of the responsibilities and duties of the company as to exonerate the subscribers from payment? *     *     If the leasing was not authorized by law, then the liabilities and duties of the company to which the subscription was made exist in full force, and the courts will hold it to a strict performance of all its obligations to the subscriber and to the public. The lessee will only be regarded as its servant, and the corporation, which receives its franchise from the State, is not, by the act of leasing, discharged from its contracts or released from any of its liabilities. When plaintiff in error shall have paid his subscription and received his certificate of stock, he then will have equitable rights to be protected by the courts, and may prevent gross mismanagement of the property and misapplication of the funds of the corporation, but the mere fact of leasing, and probable or even certain loss in the earnings of the company, constitute no defense to the note."

That case disposes of the second and sixth pleas in terms, and plea "9 a," in effect. The pleas in that case were the same as the second and sixth in this. If the company had no power to lease the road and its franchises, then the lease is void, and appellees can, when they receive their stock, apply to a court of equity and have the lease canceled. If, on the other hand, the charter empowers the company to make such a lease, then appellees must have known the fact when they subscribed, and the exercise of a power granted by the charter must be presumed to have been contemplated by appellees when they gave the note. The exercise of any legitimate power granted by the charter can never be held, however disastrous to the enterprise, to constitute a failure of consideration for a subscription to the capital stock. To so hold, would be to restrict the company in their action, so that every step taken must, under all circumstances, be beneficial to the company, or the subscriber would be released, if not entitled to sue for and recover back subscriptions paid. Such a rule can not be the law.

Again, if the company have the power to lease the road, and in doing so have exceeded their powers, a court of equity would give relief, on a proper showing. Or if the lease was contrived for the purpose of defrauding the stockholders and sacrificing their rights, or to pervert the franchises and property from their legitimate to fraudulent and illegal purposes, then a court of equity, when properly invoked, would afford the requisite relief. But these are not questions that can be investigated in a court of law.

A petition for a rehearing having been filed in this case since filing the opinion, we have carefully examined the grounds urged for a rehearing, and have also re-examined the grounds for the decision heretofore announced, and are satisfied with and adhere to it; but have seen proper to modify the opinion then filed, and to substitute this in its stead. The judgment of the court below is reversed, and the cause remanded.

*Judgment reversed.*