NINIAN W. EDWARDS *et al.*

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

1. TAXES AND TAXATION—*per cent certified to by Auditor, etc., may exceed amount of State tax appropriated.* A tax levied for State purposes is not void, in whole or in part, for the reason that the rate per cent fixed by the Governor, Auditor and Treasurer, and certified by the Auditor, will produce a larger amount than is authorized by law to be levied. These officers may fix such rate per cent as, in their judgment, will produce the net amount required, after deducting commissions and probable losses in the collection of the revenue.

2. SAME—*law in reference to State tax to be levied.* While the constitution requires the legislature to provide for its appropriations and determine the amount of revenue to be raised for State purposes, it does not require it to fix the rate per cent to raise the required amount, and does not prohibit the legislature from assigning that duty to certain State officers.

3. SAME—*statute repealed.* The Revenue act of March 30, 1872, in connection with the amendment of May 3, 1873, worked a repeal of all prior conflicting laws, whether found in general laws or in special charters of cities and towns.

4. SAME—*as to limit to municipal taxation.* Section 122, of the Revenue act of 1873, does not repeal that part of the charter of the city of Springfield which prohibits the levy of a tax exceeding two and one-half per cent on the assessed valuation of property in the city.

5. A general law, requiring a city to make return of the amount of taxes it requires to be levied to the county clerk of the county, anything in its charter to the contrary notwithstanding, does not work a repeal of a provision in its charter prohibiting the city from levying over a certain rate per cent for taxes, but the city is bound to obey both laws, there being no conflict between them.

6. SAME—*constitutionality of the Revenue law.* The fact that certain credits and deductions are allowed, in the assessment of personal property, under the Revenue law, for taxation, does not establish a want of uniformity in the levy

of taxes, as the law operates alike upon all persons. The want of perfect equality in taxation affords no ground to defeat a judgment for taxes.

7. SAME— *errors not affecting substantial justice.* Errors and informalities in the assessment, levy and collection of taxes, not affecting the substantial justice of the tax. present no ground to defeat its collection, they being obviated by sec. 191 of the Revenue act.

8. SAME— *enjoining taxes to pay interest on bonds.* If municipal bonds are absolutely void, it may be that taxes levied to pay interest on them would be enjoined; but when the validity of such bonds is called in question in a collateral proceeding, to which the holders of the bonds are not made parties, it must clearly appear that they are void, to justify the court in defeating the collection of taxes to pay interest thereon.

9. MUNICIPAL SUBSCRIPTION— *validity as depending on proper time of election.* Where a law authorizing a municipal subscription to a railway corporation upon an affirmative vote, provided that "no vote shall be taken unless at a regular election for town *and* county officers," it was *held*, that a liberal construction of the act authorized a vote at an election for either town *or* county officers, and that a vote on the question, at a regular election for county officers, was a substantial compliance with the law.

10. SAME— *when issued to company after consolidation and change of name.* Where a railway company has power to consolidate with another company, and thus change its name, a subscription voted for a part of its capital stock will be regarded as having been made with reference to such power, and the exercise of the power will not release the subscription, but the consolidated company may enforce the same.

WRIT OF ERROR to the County Court of Sangamon county; the Hon. JAMES H. MATHENY, Judge, presiding.

This was an application, by the collector of Sangamon county, for judgment against certain real estate of the plaintiffs in error, for taxes due thereon for the year 1876 and prior years. The plaintiffs in error objected to the rendition of judgment on various grounds, which objections were overruled, and judgment rendered by the county court for the delinquent taxes.

Mr. N. W. EDWARDS, Messrs. McCLERNAND & KEYES, and Mr. N. M. BROADWELL, for the plaintiffs in error. ·

Mr. JAMES K. EDSALL, Attorney General, for the State.

Mr. JOHN C. SNIGG, and Mr. JOHN MAYO PALMER, for the city of Springfield.

Mr. ROBERT H. HAZLETT, State's Attorney, and Mr. CHAS. P. KANE, for Sangamon county.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

The first question presented by the record is, whether the tax levied for State purposes is void, in whole or in part, for the reason the rate per cent certified by the Auditor would produce a larger amount than was authorized by law to be raised.

Sec. 118, chap. 120, Rev. Stat. 1874, page 877, provides: "The Governor, Auditor and Treasurer shall, annually, on the completion of the assessment and equalization of property, ascertain the rate per cent required to produce the amount of taxes levied by the General Assembly." Sec. 120, of the same act, declares: "The Auditor shall, annually, compute and certify to the county clerks such separate rates per cent as will produce the net amounts of State taxes authorized to be levied."

It is unreasonable to believe that it was ever contemplated by the legislature that the whole amount of the taxes levied for a given year would be collected. The history of the State, from its organization down to the present time, will demonstrate that such a thing has never occurred. Commissions have to be paid from the amount collected to townships; allowances have to be made for such taxes as can not be collected by the different officers; lands may be forfeited to the State for the want of bidders, and in various other ways losses may occur which will necessarily detract from the amount of the levy. If, therefore, the Governor, Auditor and Treasurer, in the determination of the rate per cent, should be limited to the exact amount which would raise the amount authorized by the legislature, making no allowances for commissions and losses in the collection of the revenue, the result would be a

constant embarrassment of the State in meeting its liabilities and current expenses, on account of a deficit in the amount raised each year.

We can not give the law which places this responsible duty in the hands of these high officers of the State such a narrow construction. When they enter upon the discharge of the duty imposed, they have before them the assessed value of all the property in the State. The law fixes the amount of revenue to be raised upon that assessment. In ascertaining the rate per cent necessary to raise the required amount, it is proper for them to take into consideration the past history of the State in regard to the amount of losses and deductions which will probably occur in the collection of the revenue, and, in the exercise of their judgment upon this basis, fix upon a rate per cent which will produce the *net* amount required to be raised. Indeed, the language of sec. 120 does not seem to leave room for a doubt in regard to what was intended. The rates per cent required to be certified to the county clerks, as therein declared, are such "as will produce the net amount of State taxes authorized to be levied." Nor can the act in question, under a reasonable interpretation, be held to be in conflict with any provision of the constitution of 1870, as supposed. The constitution, it is true, requires the legislature to provide for the appropriations, and determine the amount of the revenue to be raised; but we are aware of no provision in that instrument which requires the legislature to fix the rate per cent necessary to raise the required amount of revenue, or that prohibits the legislature from assigning that duty to the officers named in the act.

It is also contended, that certain taxes assessed for State purposes should have been applied in discharge of the local railroad aid debts, under the provisions of the act of April 16, 1869. This question it will not be necessary here to consider, as it is disposed of by *Ramsey* v. *Hœger*, 76 Ill. 432. It was there held, the act of 1869 did not constitute a contract

between the State and the creditors of the counties and other localities intended to be aided by the provisions of the act.

Several objections were interposed to the taxes levied for and on behalf of the city of Springfield, but we do not understand these objections go to the extent of affecting the substantial justice of the tax, except the objection that the city exceeded the limit prescribed by law in the amount of the levy.

The amount of tax certified by the city to the county clerk, and by him extended upon the collector's books, for the year 1876, was $165,774. The assessed value of the property in the city for the same year amounted to $5,644,985. Upon this assessment, the rate per cent to produce the amount of the levy would be nearly three per cent. It is conceded that the rate per cent exceeds the prohibition contained in the special charter of the city of Springfield, that charter allowing, for all purposes, a levy of but two and one-half per cent.

The attorneys for the city, however, claim that the levy may be sustained under sec. 122 of the Revenue act of 1873, Rev. Stat. 1874, page 878, under which, it is contended, there is no limitation of the amount of tax a city may levy. Again, it is contended the provision in the act of 1873, known as the " City Tax Act," that " the aggregate amount of taxes levied for any one year shall not exceed the rate of three per cent upon the aggregate assessed valuation of all property assessed," authorizes the levy.

It is, doubtless, true, that the adoption of sec. 4, art. 9, of the constitution of 1870, rendered a revision of our Revenue law necessary, in order, if for no other purpose, that a return of all unpaid taxes might be made to some general officer of the county who had authority to collect, and make sale of lands in case the taxes should not be paid. The Revenue act of March 30, 1872, accomplished that purpose, and in connection with the amendment of May 3, 1873, Laws of 1873, p. 45, worked a repeal of all prior conflicting laws, whether such conflict should be found in the provisions of general laws or

those of special charters in cities, as was held in *Andrews* v. *The People*, 75 Ill. 605.

But did sec. 122 repeal the provision in the charter of Springfield which prohibits the city from levying a tax exceeding two and one-half per cent? The section is as follows:

"Sec. 122. The proper authorities of towns, townships, districts, and incorporated cities, towns and villages, collecting taxes under the provisions of this act, shall, annually, on or before the second Tuesday in August, certify to the county clerk the several amounts which they, severally, require to be raised by taxation, anything in their respective charters, or in acts heretofore passed by the General Assembly of this State, to the contrary notwithstanding."

The substance of this section was originally enacted as section 122, in the act of March 30, 1872, the first Revenue law passed after the adoption of the constitution, and its purpose, no doubt, was, to provide a uniform system throughout the State under which taxes should be extended and levied. Where a return is made to a general officer, like the county clerk, any person owning property in the county, upon going to that office, could ascertain the amount of the various levies required for all purposes. But the fact that a city was required, by a certain date, to make return of the amount of the levy required to the county clerk, anything in the charter to the contrary notwithstanding, can not, by any fair or legitimate construction of the language used, be held to work a repeal of a provision in the charter prohibiting the city from levying over a certain per cent for taxes. No conflict exists between sec. 122 and the prohibition contained in the charter. One relates to one subject, and the other to another and different subject. The authorities of the city of Springfield were bound to obey the requirement of sec. 122 in making a return, and at the same time, as to the amount of return, they were controlled by the charter.

So far as reliance is placed upon the City Tax act, so called, that position is fully answered by the decision of this court in

*The People* v. *Cooper,* 83 Ill. 585, where the act was held to be unconstitutional in all its parts.

Plaintiffs in error also insist, that the taxes levied to pay interest on township bonds can not be sustained, for the reason, as they claim, the bonds were issued without authority of law and are void. If the bonds were absolutely void, it may be true taxes could not be collected to pay interest upon them, but when the bonds are called in question in a collateral proceeding, the holder of the bonds not being a party to the proceeding, it should clearly appear that the bonds were void, before a court would undertake to so hold. The first objection to the bonds is, the election at which they were voted by the voters of the town of Springfield, was not held at a regular town election, as required by the law. The charter of the Pana, Springfield and Northwestern Railroad Company, under which the election was held, provides, " no vote shall be taken unless at a regular election for town and county officers." The election was held at the regular county election, on the 7th day of November, 1865. The language conferring the power to vote is somewhat ambiguous, but it should receive a reasonable construction, such as will sustain, if possible, the acts had under it and the rights acquired by virtue of the act. It is manifest, if the language employed should receive a literal construction, no vote could be had, because town and county officers were not, under our law, elected at the same time. But we are satisfied the manifest intent of the act was to authorize an election at the time of the regular election for town or county officers, when a full and fair expression of the voters at the polls could be had. This has been done, and the vote at the regular election for county officers was, in our opinion, a substantial compliance with the law. Again, the bonds are claimed to be void on the ground the subscription was voted to the capital stock of the Pana, Springfield and Northwestern Railroad Company, and issued to the Springfield, Illinois and Southeastern Railroad Company. The right of the Pana, Springfield and Northwestern Railroad Company to consoli-

date its road with the Illinois Southeastern Railroad Company, and thus form the Springfield and Illinois Southeastern Railroad Company, is not questioned or denied. Where a railroad company has power to consolidate with another company, and thus change its name, a subscription to the capital stock of such company must be regarded as having been made with reference to such power, and the exercise of the power will not release the subscribers to the capital stock of the company from the subscription. *Ottawa, Oswego and Fox River Valley Railroad Company* v. *Black,* 79 Ill. 262. We do not regard the objection to the tax levy to pay the interest on the bonds as well taken.

It is also objected, that the revenue law is unconstitutional, because the method of assessing is not uniform. The fact that certain credits and deductions may be allowed in the assessment of personal property, does not establish a want of uniformity. Where a law operates alike upon all persons and property like situated, it may be regarded as uniform. This, as we understand our revenue law, is its practical operation. Perfect equality in taxation is a problem of difficult solution. One may be assessed too low and escape his just proportion of taxation, or another person too high, and be compelled to pay too much, and yet, such are evils which it is difficult for the most perfect system of taxation to remedy; and because such individual cases may occur, affords no ground to defeat a judgment for a tax levy. The remedy for such individual cases is before the different boards of revision provided by the statute.

Other objections have been urged on account of errors and informalities in the proceedings of the officers, but as they do not affect the substantial justice of the tax, under the recent decisions of this court they are obviated by sec. 191 of the Revenue act.

The judgment will be reversed as to the city tax of the city of Springfield; in all other respects it will be affirmed.

*Judgment affirmed in part, and in part reversed.*

SCHOLFIELD, C. J. and WALKER, J.: We do not concur in so much of this opinion as holds that the Governor, Auditor and Treasurer may, in the discharge of the duty enjoined by statute of "ascertaining the rate per cent required to produce the amount of taxes levied by the General Assembly," declare a rate per cent which, applied to the aggregate assessed valuations, will produce a sum in excess of the amount levied by the General Assembly.

Taxation ought to be levied, undoubtedly, so that the needed revenue shall be brought into the treasury at the proper time; and to accomplish this, it is conceded, failures in collection must be anticipated. But this applies to the General Assembly, and not to those whose function is merely to determine the rate per cent required to raise a given sum, and we must presume that the levy, as made by the General Assembly, is designed to cover failures in collection. It is obvious, that adding to the sum levied by the General Assembly an amount sufficient to meet anticipated failures in collection, is but making a levy for that amount, or, in other words, imposing upon the tax-payer the additional rate per cent necessary to produce that amount. But the power of imposing or levying taxes is a legislative power, whether exercised by the General Assembly, by counties, towns, school districts or municipal corporations, and it can not be delegated to purely ministerial officers. Cooley on Taxation, p. 40, 41; Burroughs on Taxation, p. 194, § 91.

If such officers may increase the rate of taxation, with no other limitation or restriction on their action than their judgment of the extent there will be failures in future collections, many of the constitutional guarantees against improvident or oppressive taxation will be of little value.

We held in *Ramsey* v. *Hœger*, 76 Ill. 432, that the duties enjoined upon the Governor, Auditor and Treasurer, in respect of the levy of taxes, was purely ministerial, and it is difficult to appreciate how, in view of that decision, their action

here can be sustained. We believe that this ruling, as a precedent, is a most dangerous one, and that injurious results will flow from it if it shall be adhered to.