# Union Trust Company *et al.*

## *v.*

## Herman G..Weber, Collector, etc. *et al.*

*Filed at Mt. Vernon October 2, 1880.*

1.  Taxation—*who are owners of a railroad for purposes of taxation—contractors.*  Contractors binding themselves to construct and equip a railroad, and who are to receive therefor subscriptions to the stock, and bonds, and mortgages on the road, and are to furnish and pay for all materials, labor and machinery, and who are placed in possession of the road to enable it to perform the contract, and authorized to operate the road, and receive the earnings thereof, paying to the railroad company the net profits, are not vested with the franchise and right of way, and are not the owners of the road for purposes of taxation.

2.  Same—*assessing in wrong name.*  The listing or assessing of railroad property in a wrong name as owner, forms no ground for enjoining the collection of the tax thereon.  Property is liable to pay a tax without reference to its ownership.  Section 253 of the Revenue act makes all taxes on real estate a lien on the same from and after the first day of May in the year it is assessed, without regard to its ownership.

3.  Same—*as to what is real estate and what is personal property of a railroad.*  The land constituting the right of way of a railroad, with the ties, rails, etc., in place on the track, and turn-outs, depot grounds, and the buildings on the same, are real estate, but the rolling stock is made by statute, for the purposes of taxation, personal property.

4.  Same—*lien on real estate for tax on personalty.*  Taxes assessed on personal property of the same owner become a lien on his real estate, and a tax upon the capital stock and franchise of a railroad company, whether they be regarded as real or personal property, is a lien upon the real property of the company.

5.  Same—*apportioning capital stock of railroad among counties.*  The failure of the State Board of Equalization to apportion the value of the capital stock of a railroad company among the several counties through which the road is located, and the making of such apportionment by the Auditor, or his clerks, so it is correctly made, is no ground for interfering with the collection of the tax.  If any county does not get its proper share of the distribution, that does not concern the railroad company.

6.  Same—*over-valuation—allegation of fraud.*  A statement in a bill to enjoin the collection of a tax, that the assessment was outrageously exorbitant, and was fraudulently made against a railroad company, as a conclusion

of the pleader, without showing in what the over-valuation consists, and giving no facts or particulars, is not sufficient to enjoin the collection of the tax. A mere allegation of fraud is not sufficient, and an over-valuation will not of itself establish fraud.

7. SAME—*failure to ascertain facts on which to assess.* Where a railway company fails to make a return of its property, as required by law, to the auditor, and the State Board of Equalization has before it the return made to the county clerk by an agent of the contractors who built the road, which is not shown to be untrue, the company can not defeat the collection of the tax levied on the assessment made upon such a basis, on the charge that the board did not ascertain the necessary facts upon which to fix the proper valuation.

8. SAME—*failure to return property as delinquent.* The failure of the collector to return the taxes assessed against railroad property as delinquent, will not affect the rights of the State or municipalities. The taxes become a lien from the first day of May, and such lien continues until they are paid. The omission to make such return is cured by section 191 of the Revenue act.

9. SAME—*effect of defective warrant.* The want of a clause in a collector's warrant authorizing him to distrain for taxes, does not render the warrant void. Such a warrant would fully protect any person paying his taxes. But if the warrant was void, that would not operate to release or discharge the taxes. If not collected in one year, the statute requires the taxes to be brought forward the next year and collected as back taxes.

10. SAME—*omission to bring forward back taxes—subsequent incumbrancer.* The taking of a deed of trust or mortgage on real estate charged with a subsisting lien for taxes of preceding years not brought forward or extended, will not operate to discharge such back taxes, or release the lien of the same. Neither will the appointment of a receiver in a suit against the owner of the property have such effect. He is not a purchaser, within the meaning of section 278 of the Revenue law.

11. SAME—*levy in excess of the law.* The levy by the Governor, Auditor and State Treasurer of a per cent that produces an amount of taxes above the sum authorized by the legislature to be raised, will not render the levy void, either in whole or in part.

12. SAME—*assessment of rolling stock, etc., of railroad—ownership of contractor.* Where a construction company bound by its contract to construct and equip a railroad, purchased and owned the rolling stock, and other personal property used in the work of construction, on the first day of May in a certain year, when the property was listed for taxation, it was *held,* the person making the return of the same to the county clerk, not being the agent or superintendent of the railroad company, had no authority to act for or bind the company, and the collection of the tax on such property, as against the railroad company, should be enjoined, as it could not become a lien upon its real estate.

13. Same—*enjoining collection of taxes.* The collection of a tax should never be enjoined, except in cases where the tax is levied upon property exempt from taxation, or where it is doubly taxed, or the tax is levied without warrant of law, or by persons having no power to make the levy, or where a clear case of fraud in making the valuation is shown. In the latter case, the proof must be clear and irresistible, and the injury likely to result considerable.

14. Receiver—*whether conveyance to him necessary.* A receiver, by his appointment, is authorized to take and hold possession of property under the control and direction of the court, and the general practice seems to be, when necessary for the recovery or preservation of personal property by him, the defendant will be required to assign the property by proper written assignment, and where it is necessary to execute leases, or to bring ejectment, etc., for real estate, an assignment or conveyance to the receiver is necessary. If he is merely authorized to sell property, like a master, he takes no title.

Appeal from the Circuit Court of St. Clair county; the Hon. William H. Snyder, Judge, presiding.

This was a suit in chancery instituted in the court below, for the purpose of enjoining the collection of certain taxes.

Messrs. Judd & Whitehouse, for the appellant.

Messrs. G. & G. A. Koerner, for the appellee.

Mr. Justice Walker delivered the opinion of the Court:

The allegations of the bill, admitted by the demurrer, raise a number of questions, a portion of which have been settled by former decisions of this court, and will not be again discussed. We shall, however, consider some of the questions, passing over some of those we regard as being without force.

It is urged that the railroad and all of its appurtenances belonged to Payson & Co., who had contracted to build the road, when the property was assessed for taxation against the railroad company, and that the company could, under no circumstances, be liable for the taxes; that it was, therefore, improperly listed to the railroad company. We fail to find that it appears from the bill that such was the fact. The agreement shows that Payson & Co. bound themselves to

construct and equip the road, and were to receive therefor subscriptions to the stock, bonds and mortgages on the road, etc., and to furnish and pay for all materials, labor and machinery.

It is true the construction company were placed in possession, to enable it to perform the contract. It was also authorized to use and operate the road, and receive the earnings thereof, paying to the railroad company the net profits derived therefrom. But this falls far short of vesting the title to the franchise and right of way and other property in the construction company. The possession of real estate is usually placed under the control of builders of houses, factories, etc., but no one supposes that they become the owners of the real estate and the structures erected thereon.

But the right of way, depot grounds, railroad track, and franchise were liable to taxation, without reference to who was the owner. The listing of it in the wrong name as owner, clearly could form no ground for enjoining a tax. The property was liable to pay a tax without reference to its ownership. If it was listed in a wrong name, that in nowise rendered the tax inequitable or unjust. The 253d section of the revenue law makes all taxes on real estate a lien on the same, from and after the first day of May in the year in which the same are assessed, until they are paid. Thus it is seen that it does not matter in whose name the property may be listed. The taxes assessed on this property, then, are a lien against it. The objection, then, that the railroad and its property should have been assessed to Payson & Co., and not to the railroad company, can not be urged to enjoin the collection of the tax on the right of way, depot grounds, track, and franchise, etc., as it inheres to the property.

The statute has also provided that the taxes levied on personal property shall be a lien on real estate, and taxes on real estate a lien on personal property. (See sec. 255, chapter entitled " Revenue.") That the land constituting the right of way, with the ties, rails, etc., in place on the tracks, is real

estate, we apprehend none will dispute.    There can not be the slightest doubt that turn-outs, depot grounds, and the buildings on the same, are real estate.    All of these were so declared by the 42d section of the act of 1872.    But the 44th section declares, for the purposes of taxation, rolling stock to be personal property, and requires it to be listed in a separate schedule.    The 48th section requires that schedules shall be returned to the Auditor of Public Accounts, of the property denominated "railroad track;" the rolling stock; the number of ties per mile in the track; the weight of iron or steel per yard, used in the main and side tracks, etc.; a statement showing the amount of capital stock authorized, and the number of shares into which it is divided; the amount of capital stock paid up; the value, etc., of shares of stock; the total amount of all indebtedness, except for expenses of the road, and the total listed valuation of its tangible property in the State.

Now the franchise is connected with and almost inseparable from the real estate owned by the company, and used for railroad purposes.    It is true that a railroad company may have a franchise to build and use a railroad before it acquires land and right of way upon which to construct and operate it.    But it is difficult to see in what manner such a company, after acquiring such property, and constructing the road, could dispose of all of its real estate, and wholly and permanently abandon it, without forfeiting its franchises.

But be that as it may, we have seen that taxes assessed on personal property, of the same owner, is, and becomes, a lien on his real estate; and there will, or can be, no question, that whether the capital stock and franchise may be regarded as strictly personal property, or so intimately connected with the real property of the company, that they are inseparable for the purposes of taxation, both, in this instance, belonged to the same company, and the tax on capital stock and franchise became a lien on the real property of the company, and it must be held for the same, unless, in some manner, it has been released or discharged.

It is urged, that after the Board of Equalization had fixed the value of the capital stock, it was required, by law, to apportion the same among the counties through which the road was located, but the board failed to make such a distribution, and the same was made by some clerk in the Auditor's office, after the board adjourned, without authority of law;—that, being so made, the tax on that valuation, and to that extent, is void.

In the case of *Thatcher* v. *The People*, 79 Ill. 597, and subsequent cases, we have held, that under the 191st section of the revenue law, any irregularity in the tax lists, or assessment rolls, or any error or informality in the proceedings of any of the officers connected with the assessment, levying or collecting of the taxes, not affecting the substantial justice of the tax itself, does not vitiate or in any manner affect the tax or assessment thereof.     In the case of *Pacific Hotel Co.* v. *Lieb*, 83 Ill. 602, it was held that there could be no presumption of dereliction of duty by the Board of Equalization.

But concede the board did not make the distribution among the counties, it involved no investigation, proof or judgment. It only required a very simple arithmetical calculation, merely to find the proportion the length of the road in each county bore to the entire length, and the full amount of the valuation of the capital stock.     It was merely a ministerial act, that in nowise involved the power of levying the tax. Again, the law virtually makes the distribution, and so it is correctly made, it is not material whether it be done by the board, as an organized body, or by a clerk of the board, or by the Auditor, or by one of his clerks.   Nor do we see, from anything alleged, that the railroad company had the slightest interest in having the precise and accurate proportion distributed to each county, so long as no more than the full value of the capital stock was distributed.   If the company has received any injury from one county having more than its proportion, and another less, or none at all, it fails to appear.   If any county has been

injured by an unjust distribution, that, in no manner, concerns complainant. We regard this objection as being without force.

The bill alleges, as a ground of relief, that the assessment was outrageously exorbitant, and was wholly unauthorized, and was fraudulently made against the road. This allegation seems to be a mere conclusion of the pleader. It is not stated in what the over-valuation consists. No facts or particulars are stated. Whether $1000 more than the company considers a fair valuation, is considered exorbitantly high, is not stated.

Again, as was held in the cases of the *Republic Life Ins. Co.* v. *Pollak*, 75 Ill. 292, and *Ottawa Glass Co.* v. *McCaleb*, 81 Ill. 556, the courts have no power to revalue property for taxation. That power, by the provisions of the constitution, is entrusted to other persons or officers.

Nor has it ever been held that the mere charge of fraud in a bill is sufficient to authorize a court to enjoin the collection of a tax. But it has been held by this court that an assessment higher than would be fixed by it will not be held to establish fraud on the part of the Board of Equalization. And in the case of *Adsit* v. *Lieb*, 76 Ill. 198, relief was refused where the valuation was manifestly and largely too great.

We, from the allegations of the bill, are unable to perceive any facts that prove fraud on the part of the board, or any thing tending to prove it. In a number of cases the action of this same session of the board has been challenged, but in every case we have on similar allegations sustained its acts, nor do we now perceive any reason to hold otherwise.

In the case of *Pacific Hotel Co.* v. *Lieb*, 83 Ill. 602, it was held that the fact that the shares of stock of an incorporation are worthless will not impeach the assessment, as that may be in consequence of its debts. A corporation might be so largely involved as to render the shares of its stock of no value, and yet have large sums of money owing to it subject to taxation.

It is urged, and the bill charges, that neither the Auditor nor the Board of Equalization ascertained any facts upon which to fix the valuation, and for that reason the tax should be enjoined. The board had before it the return made by Furguson, and may have had no occasion for further facts or information. It is not charged that this return was untrue; and if it was, the railroad company failed to make return as the law required. The officers of that body knew the company had franchise, capital stock and other property subject to taxation, and they knew, or should have known, they were required to make and return lists for its assessment, and failing to do so, the Board of Equalization were required to assess it on the best information they had or could readily obtain. It could not be successfully urged, where an individual fails or refuses to return a schedule of his taxable property, that the assessor had not made extensive and particular inquiries to ascertain its precise value. Had this company made returns as required by the law, then the board could have been put in possession of all the facts it is now claimed that body should have learned. If it only acted on Furguson's return, that fully justified their action.

It is urged that this property was not assessed at a rate uniform with other property of a similar character; that it was a narrow-gauge road, and cost and was worth one-third less than roads of the ordinary gauge, and should have been assessed in the same proportion. It is not, however, alleged that the right of way, depot and other railroad grounds and buildings thereon, or the capital stock and franchise, are worth less than those of other roads. Nor is it alleged that its capacity for the transaction of the business of the country and earning money is any less than that of other roads. Nor was it returned as a narrow-gauge road. The railroad company had no right to remain inactive, fail to perform their duty, and then complain because the Board of Equalization failed to go, or send a committee, or hire persons to go along the line to inspect the route, the property, the work already

performed, to ascertain its precise value and character. This would be unreasonable, and yet the argument would seem to lead to this.

Again, the uniformity of valuation of property and taxation can never be more than approximate. Revenue could never be collected if the courts were to undertake to re-assess property, and afford relief, and enjoin the collection of taxes, because the property of one tax payer was valued proportionately higher than that of another. It would be utterly impracticable, and the tax payer must be left to his remedy, if he has any, against the assessor.

The bill alleges that this tax was not returned as delinquent in the county of St. Clair or Monroe any year since the same was levied. This is admitted to ·be true by the demurrer. But we fail to see that the rights of the State and municipalities are thereby lost. We have seen that the tax, when levied, becomes a lien on real estate on and after the first day of May in the year in which it is levied, and remains a lien until paid. The statute, it is true, requires the officer to make the return, but it does not provide the lien shall be lost if the return is not made. Nor has the statute authorized the collector, by any act of his, short of the receipt of the tax, to release or discharge the lien. We have no doubt that the 191st section of the revenue law cured this omission on the part of the collector. Nor does the bill allege that the railroad company had not in any manner prevented that officer from making such a return as the law requires. We fail to perceive any force in this objection.

It is urged that there was no collector's warrant to the tax book of St. Clair county containing the taxes against the road in 1873. The warrant required the officer to collect the taxes, but did not empower him to distrain for their collection. We are unable to say such a warrant was void, nor do we suppose it was. We have no hesitation in saying it fully protected all persons who paid their taxes under it, and would have done so had this company paid its taxes. But even if

it was void, that did not release or discharge the taxes against this property, and the company could have paid its taxes notwithstanding the want of the distraining clause in the warrant. Nor was the want of such a warrant to the collector's book for Randolph county that year any objection to the collection of the taxes under a warrant in 1877. Under the statute the taxes were required to be brought forward and collected as back taxes.

It is insisted that, inasmuch as these taxes were not brought forward and placed on the collector's books each year, from 1873 till 1877, the lien is lost. Section 278 of the revenue law of 1872 is referred to in support of the proposition. That section is this:

"No such charge for tax and interest for previous years, as provided in the preceding section, shall be made against any property prior to the date of ownership of the person owning such property at the time of the liability for such omitted tax was first ascertained."

The preceding section, to which reference is made, requires, as to property liable to taxation, where the tax thereon is prevented from being collected for any year or years by any erroneous proceedings or other cause, the amount thereof shall be added to the tax on such property for the next succeeding year.

The language of the 278th section is by no means free from obscurity; but even if its meaning is as contended by appellant, do his conclusions, under the facts in this case, follow?

The Trust Company took its deed of trust or mortgage when the property was charged with the burthen of these taxes. And it is not, nor can it be, successfully claimed that by taking a mortgage on real estate charged with a subsisting lien for taxes, they are discharged or the lien released.

Then, did the appointment of a receiver produce such a result? We are aware of no rule of law, or any adjudged case independent of a statute, that holds the appointment of a receiver transfers the title of real or personal

property to the person thus appointed. Nor do we conceive by what means such an appointment can have that effect. That officer, by his appointment, is authorized to take and hold possession of property, under the control and direction of the court. And his possession is that of the court. The general practice seems to be, when necessary for the recovery or preservation of personal property by the receiver, the defendant will be required by the court to assign it by a proper written instrument to the receiver. In reference to personal property, such an assignment may not be necessary, but courts frequently require it. But where it is necessary to execute leases, or to bring ejectment, etc., for real estate, an assignment or conveyance to the receiver is believed to be necessary in all cases. The form of such a transfer is given in Edwards on Receivers, p. 86. That the court may authorize and empower a receiver, like a master and as a special commissioner, to sell real estate by a decree of court, is not doubted. He, however, in such case receives thereby no title to the property.

But if, by his appointment or by conveyance, he become invested with title to real estate, we are wholly at a loss to see any reason for holding that the lien of the State or municipalities for taxes should be lost or defeated. He but takes the property for the benefit of all lien-holders and creditors. And, we apprehend, no one will or can contend that when the State or municipalities have a lien on property for taxes, it is not paramount to all other liens. This is elementary law that can not be questioned. The receiver is not a purchaser, but he receives the possession and title, when transferred to him, to hold for all persons in interest. And if not a purchaser, there can not be the slightest claim for holding the 278th section can in any manner affect the lien for these taxes, whatever may be its meaning, which seems not to be entirely clear, or that the appointment of a receiver impaired the lien of the State and municipalities for their taxes in the slightest degree.

It is also urged that the clerks did not conform to the requirements of the 129th section of the Revenue law of 1872, in adding back taxes, interest, penalty and printer's fees,—that the amount added was too large.

In the case of *The People* v. *Gale*, 93 Ill. 128, this question was before us, and a construction was given to that section. We have not taken the time to make a computation to see whether the amount is too large. That is a question, in view of that decision, that can be determined by a simple calculation that we will not stop to make.

It is urged that the Governor, Auditor and Treasurer levied a greater per cent of taxes for the year 1873 than the act authorized to produce the revenue provided for by law.

In the case of *Edwards* v. *The People*, 88 Ill. 340, this question was before us, and it was held that the levy by the Governor, Auditor and Treasurer of a per cent that produced an amount above the sum authorized to be raised, did not render the tax void in whole or in part. It was there held that these officers might fix such per cent as in their judgment would produce the required amount. That case is conclusive of this question.

The power of the chancellor to restrain the collection of the revenue is one that should never be exercised but in cases where the tax is levied on property exempt from taxation, where it is doubly taxed, where it is levied without any warrant of law, by persons having no power to make the levy, or where a clear case of fraud in making the valuation of the property is shown. But in the latter case the proof must be clear and irresistible, and the injury likely to be produced considerable. It is so eminently just and equitable that every person or corporation receiving protection from the government should each contribute his or its fair and just proportion to its support, that a court of chancery should never interpose except to prevent great wrong and injustice. Mere technical objections, or even legal omissions, in assessing property or the collection of the tax, usually, do not affect in

the slightest degree this strong equitable obligation. If many of the requirements of the law, even those that are important, should be omitted, still the strong equitable duty to pay a tax on property remains. When it escapes, the burthen is, unjustly and inequitably, imposed on others to the extent that property is relieved from its just burthen.

· Again, most if not all of the objections that can be urged in a court of equity, may be successfully interposed at law. And, there being a complete remedy at law, the defence should be limited to that forum, except in but few cases, and that to prevent great injustice and wrong. This property belonged to the railroad company; it was liable to be taxed, the tax was imposed, and it has never been paid, and equity requires not that the tax should be enjoined, but that it should be paid.

What we have said applies to the tax imposed on, or which became a lien on, the real estate of the railroad company. We now come, however, to the tax on the rolling stock and other personal property, claimed to have, at the time of the assessment, belonged to Payson & Co., and not to the railroad company. If this property did not belong to the railroad company then it was improperly listed to it, and the tax thereon did not, nor could it, become a lien on the real estate of the railroad company. Furguson was, at least, the agent of Payson & Co., and was acting for them when he made the returns to the county clerks. Whilst it is denied that he was the principal engineer and general superintendent of the railroad company, it is alleged that he was acting in that capacity for the construction company.

The schedules returned to the clerks of St. Clair, Monroe and Randolph counties describe the rolling stock and other personal property as belonging to Payson & Co. There seems to be some confusion in these returns, growing, perhaps, out of the fact that printed forms applicable to railroads were used, and in endeavoring to make them answer for the returns of the construction company.

The return states that "H. R. Payson & Co., contractors to build and operate the Cairo and St. Louis Railroad, makes return of its property for taxation by schedules, as follows: Schedule A shows the property designated by law 'Railroad track' belonging to or controlled by the company, and the listed value thereof. Schedule marked B shows an inventory of all property denominated by law 'rolling stock,' belonging to or controlled by this company, and listed value thereof; also the length, in feet, of main track on which said rolling stock is used in Illinois, and the length, in feet, of main track on which said rolling stock is used elsewhere. Schedule C shows the tools and materials for repairs, and all other personal property (except rolling stock) belonging to or owned by said company, and the location and listed value thereof."

Schedule A is headed "Railroad track belonging to H. R. Payson & Co., contractors to build and operate the Cairo and St. Louis Railroad in St. Clair county, Illinois, May 1, 1873." Schedule B is headed "Rolling stock belonging to H. R. Payson & Co., contractors to build and operate the Cairo and St. Louis Railroad, May 1, 1873." Schedule C is headed "Personal property belonging to H. R. Payson & Co., contractors to build and operate the Cairo and St. Louis Railroad in St. Clair county, May 1, 1873." The returns and schedules filed with the clerks of Monroe and Randolph counties are substantially the same as these.

It will be observed that the return states that it is of the property of the railroad company, while the caption of each schedule describes it as the property of the construction company. With this repugnancy in this return we can only look to the circumstances under which the return was made, for a solution of the difficulty. The construction company had bound themselves to build and equip the road, furnishing materials and labor, for which the railroad company was to pay them as the work progressed, and the former company was to operate the road until completed and account for the net profits

to the railroad company. The bill alleges that the rolling stock was not delivered to, and did not become the property of, the railroad company until in September, after the schedules were returned. Now, if the construction company purchased the rolling stock and owned it when it was listed for taxation, and if Furguson was not the agent or superintendent of the railroad company, and had no authority to act for and bind the latter company, as the bill alleges, and as is admitted by the demurrer, then this rolling stock was wrongfully listed to the railroad company, and the collection of the tax thereon should be enjoined. The same is true of the tools and other personal property.

But if the personal property belonged to the railroad company on the first of May, 1873, it was properly listed to it, without reference to the manner or form in which the return was made. Or, even if it belonged to the construction company, and Furguson was the superintendent of the railroad company, and he returned it as belonging to the railroad company, there would be no grounds for staying the collection of the tax, as, under the statute, it became a lien on the real estate. As to the listing and ownership of the personal property, the bill makes a *prima facie* case for relief, and that part of the bill requires an answer.

The decree of the court below is reversed, and the cause remanded, with leave to defendants to answer.

*Decree reversed.*

DICKEY, Ch. J.: I concur in the conclusion and judgment, but not in all of the views expressed.