ANTON BINKERT

*v.*

FREDERICK G. JANSEN *et al.*

| 94 | 283 |
|----|-----|
| 120 | 563 |
| 94 | 283 |
| 28a | 501 |
| 94 | 283 |
| 128 | 454 |
| 94 | 283 |
| 172 | 281 |

1. TAXATION *by the city of Quincy—as to the rate thereof—and by what law governed.* The act of 1863 "amendatory of the several acts relating to the city of Quincy, to provide for raising a revenue therein, and regulating the costs arising under the charter and ordinances of said city," fixes the limit of taxation in that city upon real and personal property, at $1.03 upon each one hundred dollars of the assessed value of such property, for all purposes, and this includes taxes for interest and sinking fund, other than the interest on registered bonds, which is provided for in another way.

2. The repealing clause in the 5th section of the act of 1863, after declaring in express terms the repeal of all laws and parts of laws, other than the provisions thereof touching the levying and collection of taxes on property within the city, except those regulating such collection, and all laws in conflict therewith, contains the following: "but this act shall not affect taxes of said city relating to streets and alleys, or to licenses of whatever nature, nor any source of revenue other than taxes on real or personal property." Under the charter of 1857, the city had power, for the purpose of keeping its streets and alleys, etc., in repair, to levy a capitation tax. The only taxes relating to "streets and alleys" not affected by the repealing clause of the act of 1863, is this capitation tax. A general tax on real and personal property for "streets and alleys" is not within the saving clause of the 5th section of the act.

3. The city of Quincy is not incorporated under any general law, but under special charter granted before the adoption of the present constitution. The act of 1877, "in regard to assessment and collection of municipal taxes," does not confer upon cities, villages, etc., incorporated under special charters, the same power to levy taxes to raise the amounts appropriated by ordinance that cities and villages incorporated under the general law of 1872 possess, nor does the repealing clause of the act of 1877 remove the limitations imposed by the charters or the special laws affecting municipal taxes. That act has reference only to the mode or manner of assessing such taxes, the purpose being to require uniformity in that regard, and has no relation whatever to the rate of taxation.

4. PUBLIC LAWS—*what to be so considered—judicial notice.* It is doubtless a correct principle, that all acts of the legislature conferring or restricting the revenue powers of a municipal corporation are in their nature public laws, whether so declared in terms or not, and of which all courts will be bound to take judicial notice in all proceedings affecting revenue matters.

Appeal from the Appellate Court of the Third District.

This was a bill in equity, by Frederick G. Jansen and others, against Anton Binkert, in the circuit court of Adams county, and heard before the Hon. John H. Williams, judge, presiding.

The object of the bill was to enjoin the collector, Anton Binkert, from the collection of certain unpaid city taxes of the city of Quincy for the year 1878. The court overruled a demurrer to the bill, and the complainants abiding by their demurrer, a decree was rendered in accordance with the prayer of the bill. On appeal, the Appellate Court affirmed the decree of the circuit court, whereupon an appeal was taken to this court.

Messrs. Wheat & Marcy, for the appellant:

All legislative acts affecting the revenue powers of a municipal corporation are public, whether so declared or not, and within the judicial cognizance of the court. *Browning* v. *Springfield*, 17 Ill. 146; 1 Dill. on Mun. Corp. sec. 50.

The act of 1877 conferred the same power, as to amount of taxation, upon cities incorporated under special charters, which was vested in cities incorporated under the city and village act. Laws 1877, 61; Rev. Stat. 1874, 227, 231.

No word in a statute is to be regarded as unmeaning or useless. *Decker et al.* v. *Hughes et al.* 68 Ill. 41.

Words in a statute should be construed according to their usual, natural and popular import. *Way* v. *Way*, 64 Ill. 410; *Stuart* v. *Hamilton*, 66 id. 255.

The word "assess," in the law of 1877, includes the fixing of the amount of taxation. 1 Burrill's Law Dict. 140, 141; Const. 1848, art. 9, sec. 5; Const. 1870, art. 9, secs. 8, 9; Rev. Stat. 1874, 254, 259; art. 8, secs. 1, 2, 4, Rev. Stat. 1874, 231.

If the act of 1877 is construed to apply only to the manner of certifying and collecting municipal taxes, it accomplishes

nothing, and leaves the law substantially as it was before.   2 Gross' Stat. 354, sec. 122; City and Village Act, art. 8; *The People* v. *Cooper*, 83 Ill. 592–5.

Prior to 1877, the legislature had repeatedly endeavored to create a uniform power of taxation in cities, and these efforts had failed in consequence of adverse decisions.   City Tax Act, Rev. Stat. 1874, 254; *The People ex rel. Miller* v. *Otis*, 74 Ill. 384; Sess. Laws 1875, 33; *The People* v. *Cooper*, 83 Ill. 585, 595–6; *Edwards* v. *The People*, 88 id. 345–6.

Increase or restriction of revenue power of a city organized under special charter can, since 1870, only be effected by a general law.   *Spring* v. *Olney*, 78 Ill. 101.

If the law of 1877 be construed as above contended, all cities will, for the future, be placed on a uniform basis of taxation not exceeding 2 per cent.   Bradwell's Laws of 1879, 62.

The act of 1863 expresses an intention, first, that street and alley taxes shall not be levied under or included in section 4 of that law; and second, that street and alley taxes should continue to be levied.   Priv. Laws 1863, p. 171, sec. 5.

By section 4 of the law of 1863, the payment of interest was thrown upon the general fund; hence the necessity of relieving that fund from the item of streets and alleys.   Compare charter of 1857, ch. 3, secs. 2–5, with Private Laws of 1863, p. 171, secs. 4, 5.

Where power to construct public works is conferred on a city, and no express power of taxation is granted, reasonable power is implied.   *United States* v. *New Orleans*, 98 U. S. 381.

The intention of section 5 of the law of 1863 was either that section 2, chapter 3, of the charter should remain in force as to street and alley taxes, or that such taxes should be levied at a reasonable rate, and, in either case, as a tax *additional* to the 50 per cent tax authorized by sec. 4 of the law of 1863.

The tax for interest and sinking fund may be legal, notwithstanding the facts averred in the bill, and must, therefore,

on demurrer, be pronounced legal. *Taylor* v. *Thompson,* 42 Ill. 10; *Munson* v. *Miller,* 66 id. 380, 382, 3, 4.

As to powers of Quincy to contract debt, levy interest tax and provide sinking fund, see Sess. Laws 1851, 144; Priv. Laws 1853, 471; Priv. Laws 1857, 229, 1052, 163, 160, 175, 181; Pub. Laws 1849–51, 33.

The power to levy interest taxes and maintain the sinking fund could not be withdrawn as to debts *originating* prior to 1863. *Van Hoffman* v. *Quincy,* 4 Wall. 535.

Mere *novation,* by funding into new bonds, after 1863, would not affect the question. The interest tax and sinking fund must be maintained until prior debts are satisfied. Novation is not satisfaction. *Van Hoffman* v. *Quincy,* 4 Wall. 554–5; *Flower* v. *Elwood,* 66 Ill. 446.

The Registration law of 1865 does not impair either the authority or duty of the city as to payment of its debts. Rev. Stat. 1874, 790, secs. 5 and 8.

A court of equity does not enjoin a tax for mere irregularities. High on Inj. sec. 355, and note 3.

The city had power to make additional appropriations during the first quarter of the fiscal year, which commenced on the third Monday in April. Rev. Stat. 1874, 227; Charter 1857, ch. 2, sec. 19.

If the amendatory ordinance was void, then only the additional $4000 specified in that ordinance should on that ground be enjoined. The amounts in the two ordinances are readily separable. *Taylor* v. *Thompson,* 42 Ill. 17.

Messrs. MARSH & McFADDON, for the appellees:

The city of Quincy not having come under any general incorporation law of this State, no legislation under the new constitution prior to 1877 had changed its power to tax. as conferred by its special charter. *The People* v. *Cooper,* 83 Ill. 595; *Edwards et al.* v. *The People,* 88 id. 340.

The law of 1877, considered by itself, is plain and unambiguous. It defines its own object to be to provide a method

of assessing and collecting taxes, and has nothing to do with the rate of taxation. Hurd's Rev. Stat. 1877, p. 245.

The same law of 1877, considered in connection with those portions of article 8 of the general Incorporation law, imported into and made a part of itself by reason of said reference, can effect no change in the rate of taxation fixed by the special charter of the city of Quincy:

1.   Because said article 8 does not purport to confer power to tax at all, but presupposes a power to tax existing, and elsewhere determined. In the case of the city of Quincy that power is determined in her charter. In the general Incorporation law, it is conferred by article 7 of that law, which article is not made a part of the law of 1877. Hurd's Rev. Stat. 1877, p. 222.

2.   Because the Supreme Court has designated the systems in the general Incorporation law and in the general Revenue law relating to the assessment and collection of taxes, as one and the same. *Andrews* v. *The People*, 75 Ill. 612; *The People* v. *Cooper*, 83 id. 592; and the Supreme Court having, in *Edwards* v. *The People*, 88 Ill. 345, decided that the revenue law had no effect on the rate of taxation as fixed by a special charter, the same result must follow from said last named case, so far as article 8 of the Incorporation law enters into the law of 1877.

3.   Because the provisions of a charter fixing a rate of taxation and article 8 of the general Incorporation law and section 122 of the Revenue law relate to different subject matters. Rev. Stat. 1874, pp. 23, 1, 878; *Edwards* v. *The People*, 88 Ill. 345.

The course of legislation and judicial decision prepared the way for and made it most natural to expect the passage of a law providing, not a rate of taxation, but a manner in which cities could with certainty collect their legal taxes. Laws 1873, p. 51; *The People* v. *Otis*, 74 Ill. 385; *Andrews* v. *The People*, 75 Ill. 612.

The course of legislation since the new constitution went into effect has been in the direction of modifying special charters only with the consent of the people. *The People* v. *Cooper*, 83 Ill. 590; Rev. Stat. 1874, p. 211 sec. 1, p. 240 sec. 168, p. 245 sec. 196; Session Laws 1875, p. 43.

The court should construe the act of 1877 and the special charters as to rate of taxation so as to make both stand. *United States* v. *Tyner*, 11 Wall. U. S. 92; *City of Chicago* v. *Quimby*, 38 Ill. 274.

That no inconsistency exists between the law of 1877 and the charter rate of a city, and that both may stand, appears in *Edwards* v. *The People*, 88 Ill. 340.

The power to tax can not be deduced from considerations of inconvenience. *Hill* v. *City of Chicago*, 60 Ill. 91; *Hyatt* v. *Taylor*, 42 N. Y. 260; Dillon on Corp. sec. 605; *Shackelton* v. *Town of Guttenberg*, 39 N. J. Law, 663.

The result of section 5 of the act of 1863 was to save to the city special taxes it had a right to levy under the charter of 1857, for paving, etc., of streets, alleys or avenues, and grading and paving sidewalks, and the *per capita* tax authorized by said charter for repairing streets, lanes, avenues and alleys. Private Laws 1857, pp. 164, 176, 178. And also wharfage, and license, taxes and fines, and other incidental sources of income. Private Laws 1857, ch. 4, secs. 35, 36, 47, 48, 55, 56, 58, 59.

The whole scope of the law of 1863 is restrictive of powers conferred by the charter of 1857. Compare Private Laws 1857, p. 160, ch. 3, secs. 2, 3, 4, 5, with sec. 4, act 1863, Private Laws 1863, p. 172.

The construction as to streets contended for by appellant can not be followed, because it would violate the rule that requires that the construction to be adopted must harmonize with the general spirit of the act. Sedg. on Stat. and Const. Law, p. 287, rule 9 of division 17.

The city of Quincy was not authorized by law to create a

sinking fund at all, much less, after having exhausted its powers of taxation, to levy an additional tax therefor.

The law of 1863 specified a rate of taxation which the city should not exceed. Private Laws 1863, p. 172, sec. 4. No additional powers being conferred on the city, by after legislation, the powers of the city could only be exercised subject to the limit of taxation fixed by that law. *United States* v. *Macon County,* 99 U. S. 582; Burroughs on Tax. pp. 375, 376, sec. 129, and cases cited, notes 1 and 2, p. 376; *Leavenworth* v. *Norton,* 1 Kan. 432; *Jeffries* v. *Lawrence,* 42 Iowa, 505; *Beard* v. *Supervisors of Lee County,* 51 Miss. 542; 2 Dill. on Mun. Corp. sec. 610.

The law will presume that a debt was contracted simultaneously with the issue of bonds. *Jeffries* v. *Lawrence,* 42 Iowa, 503.

The $300,000 unregistered bonds, issued after 1866, but under a law of 1857, and named in the bill, were then issued subject to the provisions of the charter as amended by the act of 1863, and the city could not be required to levy a tax in excess of the charter rate to pay interest or principal of said bonds. *United States* v. *Macon County,* 99 U. S. 582; *Jeffries* v. *Lawrence,* 42 Iowa, 505; *Beard* v. *Supervisors Lee County,* 51 Miss. 242.

But the complainant's bill makes a *prima facie* case, as to said unregistered bonds, for an injunction. *Jeffries* v. *Lawrence,* 42 Iowa, 505.

And there is no intendment on the pleadings that the indebtedness on which said bonds were issued arose prior to the taking effect of the law of 1863. Story on Eq. Pleadings, secs. 452, 452 a; 1 Dan. Ch. Prac. p. 545.

Mr. Justice Scott delivered the opinion of the Court:

The questions involved in this case have reference to taxes levied by the city of Quincy for the year 1878, and the Appellate Court, to which an appeal was taken from the

circuit court, having expressed doubts as to whether that court had jurisdiction, it is stipulated by the parties, to avoid all questions as to the jurisdiction of this court, that as the original record from the circuit court is before us, it may stand, if need be, as on error, so that in any event this court can have jurisdiction to hear the errors assigned.

The bill is framed on the theory all taxes levied by the city of Quincy for the year 1878 in excess of $1.03 on each one hundred dollars worth of property, estimating the same at the assessed value, is without warrant of law, and is therefore void; and complainants, having paid all taxes that the city could legally levy for any purpose upon their property, bring this bill to enjoin the excess. The questions made arise on demurrer to the bill, consequently there can be no disagreement as to the facts.

The city of Quincy was incorporated under a special charter in 1840, and has never since then become incorporated under any general law. Prior to the adoption of our present constitution, numerous amendments to the special charter were adopted by the General Assembly and accepted by the city, that will be presently considered, so far as they authorize the imposition of taxes.

Counsel for the city seek to maintain their propositions:

1st. Under the act of 1877 the city of Quincy has power to levy taxes sufficient to raise the amount legally appropriated by the city council, without regard to prior limitations contained in the charter or other special laws affecting the city, as cities incorporated under the general incorporation law of 1872 may do.

2d. If that proposition can not be maintained, and the city is held to be governed in respect to taxation by special laws, still it was authorized by those laws to levy a higher rate than $1.03 on the one hundred dollars' worth of property, real and personal, and the decree of the circuit court should be so modified as to permit the collection of the whole amount of taxes authorized by law and remaining unpaid.

It is doubtless a correct principle that all acts of the legislature conferring or restricting the revenue powers of a municipal corporation are in their nature public laws, whether so declared in terms or not, and all courts will be bound to take judicial notice of the same in all proceedings affecting revenue matters.

The act of 1873, generally known as the "city tax act," of course can not affect the questions made on this record, as that act has been declared in all its parts and provisions unconstitutional and invalid. *The People* v. *Cooper*, 83 Ill. 585. Nor do we understand counsel to maintain that any power is derived from section 122 of the general Revenue law to levy any rate of taxation beyond that authorized by the charter and other special laws in relation to city revenues. It was expressly decided in *Edwards* v. *The People*, 88 Ill. 340, that the section of the general Revenue law cited did not repeal a provision in the charter of the city of Springfield which prohibits the city from levying a tax exceeding two and one-half per cent. It was said there was no conflict between section 122 of the Revenue law and the charter. The corporate authorities were bound to observe the provisions of the Revenue law as to the time of making the return of the amount required to be raised by taxation, but as to the rate to be levied, they were to be controlled by the charter.

On this branch of the case the question most elaborately argued is as to the effect of the act of 1877. Section 1 of that act provides that all cities, villages and incorporated towns in this State, whether organized under the general law or special charters, shall assess and collect their taxes in the manner provided for in article eight (8) of the act entitled "An act to provide for the incorporation of cities and villages," approved April 10, 1872, and "in the manner provided for in the general revenue laws of this State, and all acts or parts of acts inconsistent with the provisions of this act are hereby repealed."

The argument is, this act, by reference to the act of 1872, gives to cities and villages not acting under the general law the same power to levy taxes to raise the amounts appropriated by ordinance that cities and villages under that act possess, and that the repealing clause of the act of 1877 removes all limitations imposed by the charter, and all special laws affecting city taxes. We can not concur in this construction. Reading the whole act together, as we should do, it has reference only to the mode or manner of assessing and collecting municipal taxes, and has no relation to the rate of taxation. That being its meaning, it is not inconsistent with the charter and special laws affecting the city, which impose limitations as to the rates of taxation, beyond which the city may not go, and therefore does not operate as a repeal of such limitations.

The reference made to the "general revenue laws of the State" strengthens this view. As we have seen, the general law did not operate as a repeal of provisions contained in city charters imposing limitations as to the rates of taxation by municipal corporations. It will be observed the provisions are, cities under special charters "shall assess and collect their taxes" in the manner provided in the general incorporation act of 1872, and in the "manner provided in the general revenue laws of the State." Connecting the two provisions together, as is done, it is obvious it was the intention of the legislature to provide a uniform mode for assessing and collecting municipal taxes without regard to the rates of taxation. The necessities of the cities of the State for revenues are, of course, not the same, and the legislature has not seen fit to fix any maximum rate of taxation by general law which no city may exceed. Should the construction contended for be adopted, it would not create, as counsel seem to argue, a uniform rate of municipal taxation throughout the State. It is neither practicable nor desirable there should be a uniform rate of municipal taxation in the cities of the State, so long

as their necessities for revenues remain so different, as must always be the case.

The discussion of the second proposition submitted involves a construction of the act of 1863, entitled "An act amendatory of the several acts relating to the city of Quincy, to provide for raising a revenue therein, and regulating costs arising under the charter and ordinances of said city." Section 4 of that act confers the power and makes provision for the collection of a gas tax not exceeding twenty-eight cents, and a school tax of not exceeding twenty-five cents, on each one hundred dollars of the assessed value of real and personal property in said city in every year ; and " on all real and personal property within the limits of said city, to pay the debts and meet the general expenses of said city, not exceeding fifty cents on each one hundred dollars per annum on the assessed value thereof." The aggregate of the several sums the city is authorized, under section 4, to levy in any one year, for the purposes therein named, is $1.03 on each one hundred dollars of the assessed value of real and personal property, and of the taxes levied for 1878 only that sum, complainants insist, is legal, and, having paid that sum, they insist the residue shall be enjoined.

The difficulty arises out of the ambiguity in the repealing clauses contained in section 5 of the act. All laws and parts of laws, other than the provisions thereof touching the levying and collection of taxes on property within said city, except those regulating such collection, and all laws in conflict therewith, are, by that section, expressly repealed ; and then it is added, " but this act shall not affect taxes of said city relating to streets and alleys, or to licenses of whatever nature, nor any source of revenue other than taxes on real or personal property." By reference to former laws, it will be seen the city had numerous sources of revenue other than taxes on real and personal property, such as wharfage rates on all boats and crafts landing anywhere within the limits of the city ; from taxes imposed for licenses for keeping

ferries, billiard saloons, dram-shops, omnibuses, theatrical and other exhibitions, etc. These sources of revenue, it is plain, are not affected by the act of 1863. The difficulty is as to taxes relating to "streets and alleys." Turning again to the charter of 1857, it will be seen the city had power to levy and collect a special tax on owners of lots for the purpose of paving and grading the sidewalks in front of their respective lots and keeping the same in repair; and to pave and macadamize or otherwise improve the streets, and assess real estate benefited thereby, with the costs, provided such assessment did not exceed a certain per cent. Under the act of 1857, the city council had power, for the purpose of keeping streets, lanes, avenues and alleys in repair, to levy in each year a tax, not exceeding $2, on each white male inhabitant in the city over twenty-one years of age, not expressly exempted. It will be observed that all taxes relating to "streets and alleys," except the capitation tax, are upon real estate. The saving clause of the repealing section as to taxes, relating to "streets and alleys," is as "to other than taxes on real or personal property." Hence it follows that the only taxes relating to "streets and alleys" not affected by the repealing clauses of the section, is the capitation tax. While it may be conceded there is some ambiguity in the repealing clause of the act, that is our understanding of its meaning, and it is the most reasonable construction that can be adopted and the only one consistent with the context.

But if this were not the true construction of the fifth section, we do not understand that any special taxes for making and repairing sidewalks or paving and grading streets have been levied on the owners of lots, such as were authorized to be imposed by the charter of 1857. The appropriation made by the ordinance adopted was generally for "streets and alleys," to be levied on all property within the limits of the city, real and personal, and not upon lot owners specially benefited. A general tax on real and personal property for "streets and alleys" is not within the saving clause of section

5 of the act of 1863. It does not seem to us it was the intention of the legislature a general tax for streets and alleys should be levied each year, notwithstanding the act of 1863 fixing limitations as to the rates of taxation to be levied for the several purposes mentioned. The act will not bear that construction.

After a careful consideration we are led to the conclusion the act of 1863 fixes the limit of taxation upon real and personal property at $1.03 upon each one hundred dollars of the assessed value of such property for all purposes, and this includes taxes for interest and sinking fund other than the interest on registered bonds, which is provided for in another way. It may be said this construction will greatly inconvenience the city by cutting off needed revenues. That may be, but the court can not furnish the remedy by construction. A remedy is within the reach of the people by adopting the general incorporation act, under which taxes sufficient to raise such amounts as can be legally appropriated can be levied.

All taxes levied for the year 1878, above $1.03 on each one hundred dollars of the assessed value of real and personal property within the city, being without authority of law, are void, and equity has jurisdiction to enjoin the collection of the same, as was done.

The decree will be affirmed.

*Decree affirmed.*