## HERMAN G. WEBER, Collector,

### *v.*

### LEONARD TRAUBEL *et al.*

*Filed at Mt. Vernon June 14, 1880.*

1. TAXATION *in the city of East St. Louis—of the rate per cent allowed.* Section 1 of article 3 of the special charter under which the city of East St. Louis is organized, provides, that "the city council shall have power to levy and collect an annual tax, not exceeding one per centum per annum, upon all property, real and personal, within the jurisdiction of the city, upon the assessed value thereof." This limitation is upon the grant of the power to levy and collect taxes generally,—and its effect is, in no case shall the entire tax of the city, in the aggregate, to be levied annually, exceed the rate mentioned.

2. Section 22 of article 7 of the same charter authorizes the levy and collection of a tax, not exceeding three mills on the dollar, upon each annual assessment of the taxable property of the city, for the purpose of paying interest upon registered bonds, scrip and certificates of indebtedness. There is no repugnancy between this section and section 1 of article 3, in respect to the limit of the rate which may be levied for all purposes. The rate allowed to be levied under section 22 of article 7 is not in addition to the rate

limited in section 1 of article 3, but is a limitation upon the amount of taxation allowed for the specific purpose named in that section, which amount, when levied, is to be deducted from the aggregate amount which may be raised under the limitation of one per cent, for every purpose.

3. So, also, in respect to the operation of section 1 of chapter 81 of the Revised Statutes of 1874, entitled "Libraries," which authorizes cities to levy and collect a tax annually, not exceeding one mill on the dollar upon each annual assessment, to be known as the "library fund,"—this statute was not intended to interfere with clauses in the special charters of cities limiting the rate per cent of taxation, but the grant of power to tax for library purposes must be held to be subordinate to such limitations in special charters.

4. The act in regard to the assessment and collection of municipal taxes, approved May 23, 1877, and in force July 1, 1877, it has been held, has reference only to the mode or manner of assessing taxes,—the purpose being to require uniformity in that regard, and has no relation whatever to the rate of taxation, so it does not in any way aid the view that the city of East St. Louis can exceed the rate of one per cent limited in its charter, in taxation for any purpose whatever.

5. The "act in regard to the assessment, levy and collection of the taxes of incorporated cities in this State, for years prior to the year 1877," approved May 5, 1877, does not in anywise relate to or attempt to regulate the rate per cent of taxation which may be levied by cities.

APPEAL from the Circuit Court of St. Clair county; the Hon. AMOS WATTS, Judge, presiding.

Mr. J. M. FREELS, for the appellant.

Messrs. WILDERMAN & HAMILL, for the appellees.

Messrs. FLANNIGEN & CANBY, for Page and Buckland, trustees.

Messrs. G. & G. A. KŒRNER, for the Illinois and St. Louis Bridge Company.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

This was a proceeding in chancery, by certain tax-payers, to enjoin the collection of taxes in the city of East St. Louis, upon the ground that they are in excess of the rate per cent to which the city is, by its charter, limited in levying taxes.

The city is incorporated under a special charter adopted by the General. Assembly, and approved by the Governor on the 26th of March, 1869.  Private Laws of 1869, vol. 1, pages 885 to 911.  By sec. 1, art. 3 of this charter it is provided: "The city council shall have power to levy and collect an annual tax, *not exceeding one per centum per annum,* upon all property, real and personal, within the jurisdiction of the city, upon the assessed value thereof, in such manner as may be prescribed by ordinance, not inconsistent with the constitution of this State; and the city council may adopt, as near as may be, the mode and manner prescribed by general law for the assessment and collection of the State and county taxes."  *  *  *

The limitation of *"one per centum per annum"* herein, it is conceded by the counsel representing the city, authorizes and sustains the decree below; but he contends that sec. 22, art. 7 of the same instrument authorizes the city to levy and collect, annually, an additional tax, not exceeding three mills on the dollar, upon each annual assessment of the taxable property of the city, for the purpose of paying interest upon registered bonds, scrip and certificates of indebtedness; that sec. 1 of chap. 81, Revised Statutes of 1874, p. 662, entitled "Libraries," authorizes the city to levy and collect, annually, a further and still additional tax, not exceeding one mill on the dollar, upon each annual assessment of the taxable property of the city, to be known as the "library fund;" and that, also, "by virtue of an act of the legislature, entitled 'An act in regard to the assessment and collection of municipal taxes,' approved May 23, 1877, and in force July 1, 1877, and an act in regard to the assessment, levy and collection of taxes of incorporated cities in this State for years prior to the year 1877, approved May 5, 1877, and in force July 1, 1877, said city was fully empowered to levy all the taxes mentioned in the bill of complaint, not included in the power granted to said city by its special charter, and by the act in regard to public libraries above referred to."

These contentions will be examined in the order stated:

1.   By sec. 4, art. 3 of the charter, "power is conferred upon the city council to appropriate money and provide for the payment of the debt and expenses of the city; to borrow, on the credit of the city, a sum not exceeding $100,000, to issue bonds, scrip or certificates of indebtedness therefor, in such amounts and bearing such interest, and payable at such times and places, and in such manner as the city council may deem will make such bonds, scrip or certificates most valuable and salable," etc., etc.   And by sec. 22 of art. 7, it is provided that " a registry shall be kept of all bonds, scrip or certificates of indebtedness issued, showing a full exhibit of all material facts in relation thereto, and the city council shall levy and collect a tax, not exceeding three mills on the dollar, upon each annual assessment made for general purposes, for the purpose of paying the interest on such bonds, scrip or certificates of indebtedness, and to provide a sinking fund to liquidate the same."

And it is, therefore, contended by counsel for the city, that pursuant to sec. 4, art. 3, money was borrowed, a debt created, bonds, scrip and certificates of indebtedness issued therefor; and, under sec. 22, art. 7, power to levy and collect a tax, not exceeding three mills on the dollar, upon each annual assessment for general purposes, and *in addition thereto*, for the purpose of paying the interest upon the bonds, scrip and certificates of indebtedness, and to provide a sinking fund to liquidate the same, is clearly conferred.

It is said, in Burroughs on Taxation, 375 *et seq.*:   " The rate of taxation is often limited in charters conferring the power of taxation.   In such cases the limit is not to be exceeded,—it is one of the conditions of the grant of the power to tax."   And Dillon says, in his work on Municipal Corporations, (1st ed.) sec. 610:   " Where the power is thus limited it is not ordinarily enlarged by implication by other provisions of the charter, general in their nature, conferring the power to make contracts, or to incur liabilities, or even

giving authority to make improvements, or to erect usual or ordinary buildings." See, also, *Supervisors* v. *United States,* 18 Wall. 71.

The limitation here, in sec. 1, art. 3, is without qualification or exception. It is upon the grant of the power to levy and collect taxes generally, and its effect is, in no case shall the tax, to be levied annually, exceed one per centum per annum upon all property, real and personal, within the jurisdiction of the city, upon the assessed value thereof. This is not to be extended by implication, according to the authorities referred to,—and we are only, then, to inquire, is there certainly a direct repugnancy between this language and so much of sec. 22, art. 7, as provides that the city council shall levy and collect a tax, not exceeding three mills on the dollar, upon each annual assessment, etc.

To our apprehension there is no repugnancy whatever. The limitation in sec. 1, art. 3, is upon taxation generally,—that is to say, for each and every purpose. Whatever the purpose may be, the aggregate amount of taxation can not exceed this rate per cent. But further than restricting the rate per cent of taxation in the aggregate, it does not assume to impose any limitation.

But sec. 22, art. 7, is not a grant of power to impose taxes generally, but simply enjoins the duty of providing, by taxation, to meet certain registered indebtedness, limiting the taxation in that regard to three mills on the dollar, leaving the remaining seven mills on the dollar to be used, if necessary, by the city to meet current expenses and other classes of indebtedness. In other words, sec. 1, art. 3, limits the rate of taxation in the aggregate, while sec. 22, art. 7, limits the registered indebtedness, therein described, to a definite per cent of the limitation upon aggregate indebtedness. For all purposes there may be a levy of one per cent,—for this purpose there can only be a levy of three-tenths of one per cent.

2. What has already been said under the first point, practically disposes of the second point.

There is nothing in the statute relating to " libraries," that shows that it was in the mind of the legislature to interfere with clauses in the special charters of cities limiting the rate per cent of taxation. This grant is simply subordinate to the limitations in regard to taxation in special charters, and, in the present instance, authorizes the city of East St. Louis to levy one-tenth of one per cent for a library fund, provided the aggregate rate per cent of taxation shall not exceed one per cent. *The State of Louisiana ex rel.* v. *Mayor,* 23 La. Ann. R. 358, is directly in point.

3.  In *Binkert* v. *Jansen,* 94 Ill. 283, we held that the act in regard to the assessment and collection of municipal taxes, approved May 23, 1877, and in force July 1, 1877, has reference only to the mode or manner of assessing taxes, the purpose being to require uniformity in that regard, and has no relation whatever to the rate of taxation. We are entirely satisfied with the correctness of the views there expressed, and they are conclusive in regard to the present point.

The "act in regard to the assessment, levy and collection of the taxes of incorporated cities in this State, for years prior to the year 1877," approved May 5, 1877, and in force July 1, 1877, correctly discloses, by its title, the subjects to which it relates, one of which is not to regulate the rate per cent of taxation which may be levied by cities. It can, hence, have no application to the present case.

Seeing no cause to disturb the decree below, it will be affirmed.

*Decree affirmed.*