WILLIAM H. THATCHER

v.

THE CHICAGO AND NORTHWESTERN RAILWAY COMPANY.

*Filed at Ottawa May 12, 1887.*

1. MUNICIPAL TAXATION—*under special charters—of the purpose and rate of taxation allowable—under the act of 1883.* By the act of 1883, cities not organized under the general law, but acting under special charters, are authorized to levy and collect, in addition to the municipal taxes authorized by their charters and the act of 1881, taxes for the distinct objects named in the act of 1883.

2. A city, under such conditions, has the rightful authority, under the act of 1883, to levy a tax, not to exceed three mills on the dollar, as a sewerage fund tax, and one mill on the dollar for a water fund tax, or three mills, if voted for by two-thirds majority of all the members of the legislative authority, in addition to all the other taxes it is authorized to levy and collect by law.

APPEAL from the Circuit Court of Whiteside county; the Hon. JOSEPH M. BAILEY, Judge, presiding.

The bill in this case was brought by the Chicago and Northwestern Railway Company, against William H. Thatcher, treasurer of Whiteside county and *ex officio* collector of taxes. The object of the bill is to enjoin the collection of certain municipal taxes levied and assessed by the city of Sterling on the property of complainant, situated within the limits of such municipality. On the hearing of the cause in the circuit court, on bill, answer, replication and proofs, the court rendered a decree enjoining the entire tax levied on the property of complainant, and from that decree the collector appealed to this court.

Mr. A. A. WOLFERSPERGER, and Messrs. MANAHAN & WARD, for the appellant.

Mr. B. C. COOK, for the appellee.

Mr. CHIEF JUSTICE SCOTT delivered the opinion of the Court:

Only municipal taxes are involved in this litigation. Concerning the principal facts there is no controversy. The value of complainant's property situated within the limits of the municipality imposing the tax, is admitted. Nor is there any point made as to the regularity or validity of the ordinance directing the levying and assessing of the tax complained of. It was done by ordinance in the usual mode. The only question made is, whether the city had authority to levy the tax which is sought to be enjoined. The rate per cent levied is one and ninety-five one-hundredths of one per cent. Of this rate, it is conceded the city had rightful authority to levy one and one-half per cent in any one year, if done in conformity with its charters and certain enabling acts. The contention is as to the rate per cent above that amount—that is, as to forty-five one-hundredths of one per cent. It is said, this forty-five one-hundredths of one per cent can only be legal if the right to levy it is given by the act of 1883, in addition to all other taxes theretofore authorized by law,—in other words, do the provisions of the act of 1883, in reference to sewerage fund tax and water fund tax, mean that said taxes shall be levied in addition to all other taxes authorized by law. The argument is, it is not declared so by the act itself. But let us see how that is, and ascertain the true construction of the act of 1883.

By its original charter the city was authorized to levy and collect taxes for municipal purposes; but that power was so restricted, it could not levy, in any one year, a greater rate than one-half of one per cent on each dollar's worth of taxable property without the consent of a majority of the legal voters. By the act of May, 1881, it was provided, the rate of taxation in all cities, villages and towns of this State where a less per cent had been authorized, should be extended to one per cent of the valuation of the taxable property within

their respective limits, in addition to school taxes and taxes to pay interest on registered bond indebtedness. It is admitted the city was not authorized to levy a tax for school purposes in any amount whatever, and no part of the levy made is for school purposes. But prior to the passage of that act the city had a large "bonded indebtedness," which may fairly be said to come within the description of "registered bonded indebtedness," as those terms are used in the statute. One very considerable item in the tax ordinance is on account of that indebtedness, and no reason is perceived why that tax is not lawlul. But, as before remarked, the question most discussed is, what power is given by the act of 1883 in addition to the power given by the charter and the act of 1881. It is plainly evident, the act of 1883 provides, in relation to the sewerage fund tax, the city council shall have the right to levy a tax not to exceed three mills on the dollar, if voted for by two-thirds of the legislative authority, and one mill on the dollar for a water fund tax, or three mills, if voted for by two-thirds majority of all the members elect of the legislative authority of the city; and also provides, that in addition to all other taxes then authorized by law, three mills on the dollar may be levied for the purpose of lighting the streets, and two mills for the exclusive purpose of supplying water.

Counsel for complainant does not contend this act does not give authority to the city to levy the rate per cent specified for lighting streets, in addition to the tax authorized by its charter and the act of 1881; but the point insisted upon is, that in relation to the sewerage fund tax and the water fund tax, no authority is given to the city, by the act of 1883, to levy such taxes in addition to the amounts previously authorized by law. Although not entirely free from doubt, it is thought the point made is not well taken. The question made is purely one of construction, and very little light is shed upon it by any previous decision of this court. In *Weber* v. *Traubel*, 95 Ill. 427, it was held, the limitation on the rate

of taxation fixed by section 4, article 3, of the charter of East St. Louis, was not affected by section 22, article 7, of the same act, which provided for a tax for paying interest on registered indebtedness, and to provide for a sinking fund in that connection,—that is, that it was not in addition to the rate per cent authorized to be levied by section 4, article 3. It was so held, because it did not appear it was the legislative intention the rate of taxation, as fixed by the previous section, should be increased. It was said, and very properly, that section 22, article 7, was not a grant of power to impose taxes generally, but simply enjoins the duty of providing by taxation to meet certain registered indebtedness.

In *Binkert* v. *Jansen,* 94 Ill. 283, it was held, the act in regard to the assessment and collection of municipal taxes, approved May 23, 1877, had reference only to the mode or manner of assessing taxes, the purpose being only to require uniformity in that regard, and has no relation whatever to the rate of taxation. The principle of that case can have no application to the case being considered. Nor is it perceived there is anything in *Sparland* v. *Barnes,* 98 Ill. 595, that aids in any manner the construction of the act of 1883. The acts construed in that case had reference only to cities under the general law of 1872. Here the city is under a special charter.

Coming now to the direct question involved, it is seen the "sewerage fund tax" is provided for by the first section of the act of 1883, and the "water fund tax" by the second section. In neither section is it stated directly that the tax authorized to be levied by the city shall be in addition to the rate of taxation theretofore authorized by law, nor is it said it shall be included in the former rate that might be lawfully imposed. What, then, was the manifest intention of the legislature? If that intention appears from the whole act when considered together, of course it should control. That it was the intention of the legislature the act would confer power on cities to levy additional tax for the distinct purposes stated, seems

manifest from the provision at the close of section 2, which declares that the act "shall not be so construed as to increase the amount of aggregate taxes that may be levied in any one year by any city or village, as provided in section 1, of article 8, of an act entitled 'An act to provide for the incorporation of cities and villages,' approved April 10, 1872." Unless it was the purpose to give the right to cities to levy an additional rate of taxation to that previously authorized by law, for objects specified, what possible reason could there be for the provision the act should not be so construed as to confer that right upon cities and villages organized under the general law of 1872? Otherwise there could be no reason for excluding cities and villages, under the general law, from its provisions. It seems clear, therefore, it was the evident intention of the legislature to confer upon cities under special charters, power to levy an additional tax for the distinct objects named,—a power to be exercised only in the discretion of the legislative authority of the city. That has been done in this case, and the tax imposed is warranted by law.

The decree of the circuit court will be reversed, and the bill will be dismissed by this court, for want of equity.

*Decree reversed.*