Baltimore and Ohio Southwestern Railroad Co.

*v.*

The People *ex rel.* Oscar C. Gaston, County Treasurer.

*Opinion filed December 16, 1902—Rehearing denied February 18, 1903.*

| | 200 | 541 |
| | 200 | 5563 |
| | f200 | 3565 |
| | 200 | 541 |
| | 209 | 4156 |
| | 209 | 4159 |
| | e209 | 5160 |

1. Taxes—*right of clerk to extend tax at greater rate than necessary to meet appropriation ordinance.* The county clerk may extend a city tax at a rate per cent which will raise the net amount required by the appropriation ordinance, exclusive of the probable cost of collection and losses and deductions, provided such rate does not exceed the two per cent limit imposed by law.

2. Same—*what is not an abuse of clerk's discretion in extending tax.* Extending a city tax at the rate of two per cent, which will raise an amount fourteen per cent greater than the appropriation ordinance calls for if entirely collected, is not an abuse of discretion, where no showing is made as to the amount actually realized from the collection of the tax.

3. Same—*three mill tax for lighting purpose does not govern cities organized under general law.* Section 2 of the act of 1883, authorizing cities and villages to levy an additional tax of three mills for lighting purposes, does not affect cities or villages organized under the general law, or increase or limit their taxing power.

4. Same—*right of city to contract indebtedness without providing for direct annual tax.* Within the five per cent limitation upon indebtedness imposed by the constitution, a municipal corporation may contract indebtedness without providing for a direct annual tax, unless payment of such indebtedness is deferred to a fixed future period and the indebtedness bears interest.

5. Same—*when city incurs indebtedness beyond constitutional limit.* If a city enters into a contract in the form of a lease, but in fact a contract to purchase an electric light plant for the sum of $13,000, payable at the rate of $1000 annually for thirteen years, the city becomes indebted to the total amount called for by the contract, and to the extent that such amount exceeds the five per cent constitutional limit the contract is null and void.

6. Same—*objection that city intends to furnish light to private parties cannot be urged on application for sale.* Upon application for judgment of sale for a tax levied by a city to make a partial payment for an electric light plant, an objection that the city intends to furnish light to private consumers is not material.

Appeal from the County Court of Clay county; the Hon. John R. Bonney, Judge, presiding.

This is an appeal from a judgment of the county court of Clay county against the appellant, the Baltimore and Ohio Southwestern Railroad Company, for the balance of the unpaid city tax levied by the city of Flora on the property of appellant.

The city of Flora, in August, 1901, passed an ordinance levying the city taxes for the year 1901. One item of this tax levy was: "For the partial payment of the purchase price of the city electric light plant, the sum of $2600." The total amount levied by the ordinance was $4450. The total assessed valuation of the taxable property in the city of Flora for the year 1901 was $254,061. On this amount the county clerk extended the city tax levy at the rate of two per cent. The total city tax thus extended amounted to $5082.40, or $632.40 more than the ordinance called for. The assessed value of the appellant's property within the city of Flora for the year 1901 was $44,611. The tax levied thereon, at two per cent, amounted to $892.22. Of this amount the appellant refused to pay the sum of $392.48. When the county treasurer and *ex officio* collector applied to the county court for a judgment against appellant's lands for this delinquent tax, appellant objected to that portion of the taxes levied for the partial payment of the purchase price of the city electric light plant on the following grounds: First, because the city was authorized to levy only three mills on the dollar for lighting purposes, or $133.83 on appellant's property; second, because the amount sought to be collected was intended to be used in the payment for a plant operated by the city to furnish street lights and also to private individuals for hire; third, because the amount extended on the tax books was in excess of the amount asked for by the appropriation ordinance, amounting to $110.42 on the property of appellant; and fourth, because the aforesaid item was intended to pay an unconstitutional indebtedness, the city being at the time indebted, including this indebtedness, in excess of

five per cent of the assessed value of the property in the city. The objections were overruled by the county court and judgment entered for the delinquent tax and costs.

A contract between the Southern Illinois Electric Light Company of St. Elmo, Illinois, and the city of Flora, executed November 18, 1899, was introduced in evidence, by which, after reciting in the preamble that the light company had made a proposition to the city to lease its electric light plant to the city, and that the city had accepted this proposition by an ordinance duly passed, and that the light company was indebted on its plant in the sum of $13,000, payable in yearly installments of $1000 each, the first one due November 18, 1900, and bearing six per cent interest, payable semi-annually, the light company leased to the city its electric light plant, together with all its appurtenances, etc., for the term of thirteen years, in consideration of the payment by the city of a yearly rental of $1000 and the annual interest due on the indebtedness on the plant at the time the rent fell due. The city also covenanted to pay all taxes, assessments, etc., levied on the plant; to operate said plant at its own cost and expense and keep it in good repair and insured for the benefit of the light company, and to deliver up possession at the end of the term. In case of default in any of the covenants the city agreed to surrender the premises on thirty days' notice, in writing. The contract then contains the following covenants:

"It is further covenanted and agreed by and between the parties hereto, that the party of the second part shall have the right and option, at any time during the term of this lease, to purchase the said electric light plant for the price and sum of $13,000, or by paying off the said first mortgage coupon notes hereinbefore described, as they severally become due and payable, together with accrued interest thereon; and if said party of the second part exercise its option, hereby given, to purchase said electric light plant upon the terms and conditions here-

in above set forth, the party of the second part shall, at any time thereafter, have the right to pay the said first mortgage coupon notes, or any part thereof, in multiples of $1000, by issuing and delivering to the party of the first part, or the holders of said notes, its bond or bonds, issued in due form of law, bearing five per cent semi-annual interest, in lieu of any of said first mortgage coupon notes above described. And it is further covenanted and agreed, that if the party of the second part, at any time during this lease, exercise its option to purchase said electric light plant, the sum of $1000 paid per annum as a part of the yearly rental herein provided shall be applied in payment of the purchase money of said plant and be held to form a part of such purchase price, it being distinctly understood and agreed that the party of the second part shall only pay $13,000 for said plant in case of the purchase thereof under this agreement, in addition to the interest that may accrue thereon, until said sum of $13,000 is fully paid, as herein provided."

The light company further covenanted, in case of a purchase by the city and the payment of the purchase price as above provided, to execute a good and sufficient deed for the plant, and to assign all its capital stock to the city, and surrender its right, privilege and franchise acquired by a certain ordinance of the city. The city is in possession and operating the light plant under this lease.

Other matters necessary to an understanding of the controverted questions in the case are stated in the opinion.

Edward Barton, A. M. Rose, W. T. Bonham, and Creighton, Kramer & Kramer, for appellant:

The city of Flora has no right to levy a tax for lighting purposes exceeding three mills on the dollar. 1 Starr & Cur. Stat. chap. 24, sec. 456, p. 867.

A city has no right to collect taxes to pay for the purchase or operation of a light plant used to supply

private individuals with light for hire.  Such operation is *ultra vires.*   *Cook County* v. *McCrea*, 93 Ill. 236; *Huesing* v. *Rock Island*, 128 id. 465; 1 Dillon on Mun. Corp. sec. 55.

The county clerk has no right to extend a city tax at a rate more than sufficient to produce net amount of city tax levied.   3 Starr & Cur. Stat. 1896, chap. 120, sec. 128.

It is not doubted the tax-payer may in a proper case present this question.   *People* v. *Cooper*, 10 Ill. App. 384.

The constitution limits the amount to which a city may become indebted to five per cent of the total value of the property in the city, as ascertained by the last assessment.   Const. 1870, art. 9, sec. 12.

This prohibits contracting indebtedness, in any manner or for any purpose, in excess of the amount fixed, regardless of the time when payment is to be made.   An indebtedness is created where a contract for the payment of money is entered into.   *Springfield* v. *Edwards*, 84 Ill. 626; *Culbertson* v. *Fulton*, 127 id. 30.

John W. Thomason, State's Attorney, and R. S. C. Reaugh, for appellee:

There is no limitation upon the amount of tax which a city organized under the general law may levy for the purpose of lighting its streets, other than the general limitation of two per cent for all corporate purposes. The second section of the act approved June 21, 1883, (Laws of 1883, p. 68,) applies to cities under special charters only, and does not confer any additional powers of taxation upon cities, under the general law, for water, sewerage or lighting purposes, nor limit those already granted.   *Dutton* v. *Aurora*, 114 Ill. 138; *Culbertson* v. *Fulton*, 127 id. 30; *Thatcher* v. *Railroad Co.* 120 id. 560.

It is not only the right, but also the duty, of the county clerk, in fixing or ascertaining the rate of taxation to be extended, to take into consideration and to estimate the probable amount of losses in the collection of the tax, from removals, insolvencies, errors, property wrongfully

200—35

taxed, etc., and the expense of collection of the same, and to fix and extend a rate that will produce not less than the net amount levied. A reasonable discretion is thus entrusted to the officer, and it will be presumed not to have been abused. Even if the rate fixed results in producing a larger amount than that levied, that does not render the tax void, either in whole or in part. *Railroad Co.* v. *Baldridge,* 177 Ill. 229; *Edwards* v. *People,* 88 id. 340; *Union Trust Co.* v. *Weber,* 96 id. 346; *Hyde Park* v. *Ingalls,* 87 id. 11; *People* v. *Cooper,* 10 Ill. App. 384.

A city organized under the general law has power to provide for the lighting of its streets, alleys, public grounds, etc. City and Village act, sec. 1, art. 5, clause 11.

This power includes the power to acquire an electric lighting plant for that purpose, by purchase or otherwise, as a power necessarily implied from the express grant. *Hay* v. *Springfield,* 64 Ill. App. 671.

The tax levied, to the payment of which appellant objects, is not levied for the payment of any indebtedness whatever, but for the purpose of raising money to be applied to the purchase of an electric lighting plant; and the city is not bound by the contract in evidence, whereby it leased the plant, to purchase the same. Therefore it cannot be justly said that this tax is to be devoted to the payment of an indebtedness, whether constitutional or not. *Hay* v. *Springfield,* 64 Ill. App. 671.

The evidence in the record shows that the rental stipulated in the lease to be paid by the city has been paid for a period of time several years yet to run. The money now sought to be raised cannot be said to be due and payable as rental, in any sense. *Chicago* v. *Galpin,* 183 Ill. 399; *Beard* v. *Hopkinsville,* 44 Am. St. Rep. 230, note.

Payments agreed to be made by the city as rental, under the lease, do not constitute that class of indebtedness which the constitution prohibits. *Chicago* v. *McDonald,* 176 Ill. 404; *Kankakee* v. *McGrew,* 178 id. 74; *Danville* v. *Water Co.* 180 id. 235.

In case of a contract like the lease in evidence, the city not being indebted at the time beyond the constitutional limit, the total amount to be paid as rental under the lease is not the test of its validity. *East St. Louis* v. *Gas Light Co.* 98 Ill. 415; *Carlyle* v. *Water Co.* 140 id. 445; *Chicago* v. *McDonald*, 176 id. 404.

Mr. JUSTICE CARTER delivered the opinion of the court:

The first objection we consider is, that the county clerk extended the city tax of the city of Flora for the year 1901 at the rate of two per cent, the amount thus extended being $632.40 more than was required by the appropriation ordinance, or an excess of about fourteen per cent. The power of the county clerk to extend the tax at a rate greater than is necessary to produce the exact amount required was fully considered in *Chicago and Alton Railroad Co.* v. *Baldridge*, 177 Ill. 229, and we there held that the statute was sufficiently broad to allow the clerk "to so compute the rate per cent of the levy as that the amount produced would be sufficient to meet the sums required by the appropriation ordinance and the commissions which the statute provides may be retained by the collector out of the amounts by him collected." In *Edwards* v. *People*, 88 Ill. 340, (approved in *Union Trust Co.* v. *Weber*, 96 id. 346,) we held that a rate per cent which would produce the net amount required to be raised, exclusive of the costs of collection and the amount of losses and deductions which would probably occur, was a proper one to be adopted by the officer extending the tax.

In *Village of Hyde Park* v. *Ingalls*, 87 Ill. 11, the village trustees included the following item in their appropriation ordinance: "For amount necessary to pay the expense of collection and deficiencies arising in the collection of the last four foregoing items, $22,672.68." The court said (p. 13): "It is hardly probable that in any instance was the *entire* levy of a State, county, city or village tax collected when it was due and should have been

in the treasury. * * * If courts may, as we think they should, recognize the probability of deficiencies in collection, (from whatever causes they may occur,) then it would seem plain they must recognize the power and duty in the legislative department of the municipality to anticipate and provide against the probable deficiency. * * * A surplus may, undoubtedly, be brought into the treasury by this mode of levying, but it will not be lost. It will belong to the corporation, and may be used in extinguishing other debts or in the payment of current expenses, and thereby lighten future taxation. * * * And, in the absence of evidence showing that the trustees have clearly abused their discretion in the amount levied to supply the anticipated deficiency, we know of no reason why even a court of equity, much less a court of law, should interfere with and nullify their determination."

The statute authorizes the clerk to fix and extend a rate sufficient to produce the *net* amount required. No showing was made as to the actual amount realized from the taxes collected and no abuse of the discretion of the clerk in fixing the rate per cent was shown, except that it would produce fourteen per cent more than was required if entirely and fully collected. We are not prepared to hold this an abuse of the discretion vested in the officer by law, without a further showing. Of course, the clerk could not extend a rate exceeding two per cent even if he should deem it necessary to allow some margin for commissions, losses, etc. This case is thus distinguished from *People* v. *Lake Erie and Western Railroad Co.* 167 Ill. 283, where the total rate levied exceeded that allowed by law.

It is further contended by appellant that the city was only authorized to levy a tax of three mills for lighting purposes, as provided in section 2 of the act of 1883, entitled "An act in relation to the levy and collection of taxes for sewerage and water-works in cities of this State, that

may have established a system of sewerage and water-works for such city, and to repeal an act therein named, and to authorize the cities, villages and incorporated towns of this State to levy and collect taxes to pay for water and light." (Laws of 1883, p. 68.) Section 2 of this act embraces several distinct taxes, namely: First, all cities, whether organized under a special charter or the general law, and having water-works, are given power to levy and collect a tax not to exceed one mill on the dollar for the extension of water mains, etc., to be known as the "water fund tax," which tax may be increased to three mills by a vote of two-thirds of the legislative authority of the city; second, the legislative authority of each of the cities, villages and incorporated towns, by a two-thirds vote, is authorized, in addition to all other taxes now authorized by law, to levy and collect a tax not exceeding three mills, to be used exclusively for the purpose of lighting streets; and third, a further tax of not exceeding two mills to be used exclusively for the purpose of supplying water to such cities. The section then closes with the proviso: "*Provided, also,* that nothing in this act shall be so construed as to increase the amount of aggregate taxes that may be levied in any one year by any city or village as provided in section 1 of article 8 of an act entitled 'An act to provide for the incorporation of cities and villages,' approved April 10, 1872." This section purports to confer certain powers on all cities in the State. They "shall have power" to levy the "water fund tax;" they "shall be authorized" to levy a tax for lighting purposes, and another tax for supplying water to the city. It is obvious that to all such cities which did not already have the powers specified in this section it was a grant of additional powers, but to such cities having any of these powers already, either by virtue of a special charter or the general law, and equal to or greater than those the act confers, the act would be inapplicable as to the powers already possessed. The act is couched

in general terms, and being an enabling act it cannot be held to limit the powers of any city having greater powers than those conferred by the act. The only limitation in the act is the limitation in the last proviso, that the aggregate taxes in any city organized under the general law shall not exceed those granted by said law,—that is, two per cent. This proviso is general, and wherever it is applicable it operates as a limitation on the taxing power.

Cities organized under the general law are given by that law certain definite powers, among them the power to provide for the lighting of the streets, alleys, avenues, etc. (Art. 5, sec. 1, par. 11.) They are given the general power to levy and collect taxes for corporate purposes, the act specifying particularly how this shall be done but containing no directions as to what rate shall be levied for different purposes, the only restriction being that the aggregate amount of taxes levied for any one year, exclusive of the amount levied for the payment of bonded indebtedness or interest thereon, shall not exceed the rate of two per cent on the taxable property in the city. (Art. 8, sec. 1.) It is not contended that under the power to provide for the lighting of the streets the cities do not have the power to purchase or erect light plants. The city of Flora is a city organized under the general law, and as such has the power to levy such taxes as it may need for corporate purposes, not exceeding two per cent. How to apportion the taxes thus raised among the various corporate objects is a matter entirely within the discretion of the city council. The authority to levy the three mill tax for lighting purposes, granted by section 2 of the act of 1883, is a power not needed by the city of Flora, as the power to levy a tax for such purposes is already granted by the general law. The act purports to give power—not to limit it or take it away. So much of the statute as confers this additional power is clearly inapplicable to cities under the general law, as

far as the tax for lighting purposes is concerned, for the act cannot, nor does it purport to, enlarge their powers in this matter. The last proviso is drawn so as to be applicable to the whole section, and is applicable to cities under the general law in several of the particulars enumerated in the section, though not in all. As was said in *People* v. *Lake Erie and Western Railroad Co. supra*, the legislature has passed a number of acts giving cities additional powers, some of which acts, while couched in general terms, being more particularly intended for the relief of special charter cities. (See, also, *Thatcher* v. *Chicago and Northwestern Railway Co.* 120 Ill. 560.) The objection was properly overruled.

It is next contended that the levy in question was made to pay an unconstitutional indebtedness. Prior to the making of the lease for the electric light plant the city had a floating indebtedness of about $5000. The lease of November 18, 1899, provided for the payment by the city of the sum of $1000 annually for thirteen years, besides interest on the unpaid indebtedness of the electric light company on its plant, the payment of taxes, operating expenses, repairs and insurance. The assessed value of all property in the city for the year 1899 was $215,181. This would limit its power to incur indebtedness to $10,759.05. A short time afterwards, January 1, 1900, the city issued $10,000 in bonds, paying off with the proceeds of these bonds the floating indebtedness and applying $5000 on the option of purchase in the lease. The form of the indebtedness was thereby changed, but the aggregate amount remained the same. Since then the city has paid off $5500 on its option, besides discharging all the other obligations required of it by the contract. There is still left an indebtedness of $2500 on the contract, besides interest and the other items payable by the city.

The city contends that there is nothing now due on the lease; that the levy of $2600 is for the partial pay-

ment of the purchase price of some light plant,—not necessarily the one leased,—and not for rental; and that it is for an object fully within the powers of the city. While the contract is in form a lease, still it is evident that it has from the first been treated by the city as a contract to buy the light plant, for under no other theory could the payment, in advance, of such a large sum as was paid soon after the contract was entered into, be justified. Indeed, the city attorney testified that the transaction between the light company and the city, while in form a lease, was in fact a purchase at the date of the lease. Counsel admit that this levy of $2600 was made for the purpose of getting the money to enable it to complete its purchase of the electric light plant.

In *Culbertson* v. *City of Fulton*, 127 Ill. 30, the city of Fulton had contracted to pay for the building of a system of water-works the sum of $11,619, which exceeded the constitutional debt limitation by $1165.95. The city had levied $1700 for the completion of the payment of the contract price for the construction of a system of water-works. On a bill to enjoin the collection of this tax we held that the city became indebted by entering into the contract mentioned; that the indebtedness, however, could only be regarded as void to the extent of the amount of the excess over the constitutional limit; that up to and under that limit the indebtedness was valid; that of the $1700 levied, the sum of $1165.95 represented an illegal and unconstitutional indebtedness, and that a tax could not be levied to pay a debt forbidden by the constitution. Applying these conclusions to the facts of the case at bar, so much of the levy of $2600 as was to be applied to the payment of the illegal part of the indebtedness created by the contract referred to, yet remaining unpaid, was invalid. After deducting the amount of the bonded indebtedness there yet remained the power to contract a debt to the amount of $759.05. Deducting this from the amount levied, the excess, $1840.95, was

illegally levied and could not be collected by law. This was the $\frac{4137}{10000}$ part of the whole amount levied by the ordinance. Such part of appellant's taxes, or $369.11, was therefore illegal. Appellant refused to pay $392.48 of the tax, leaving it still liable for $23.37, for which amount and costs the judgment should have been.

It is claimed on behalf of the city that the amount of the indebtedness created by the contract is not fixed, because it also includes the payment of interest, taxes, operating expenses, repairs and insurance, the cost of some of which items could not be definitely known in advance, and it is therefore not such an indebtedness as is obnoxious to the constitutional limitation,—referring to *City of Chicago* v. *Galpin*, 183 Ill. 399. While some of these items may not be fixed and ascertainable in advance, yet the contract definitely provides for the payment of $13,000, and to that amount the city undoubtedly became indebted.

It is also insisted that the payments to be made by the city as rental do not constitute that class of indebtedness which the constitution prohibits, because, as it is said, the constitution refers only to that species or character of indebtedness the amount of which is fixed and determined, the payment whereof has been deferred to a fixed time in the future and which bears interest. This is a misapprehension of the provisions of section 12 of article 9 of the constitution. This section, first, inhibits all municipalities from becoming indebted in any manner or for any purpose to an amount exceeding five per cent of the assessed valuation; and second, provides that any municipality incurring any indebtedness, as aforesaid, shall also, at the time of so incurring the same, provide for the collection of a direct annual tax sufficient to pay the interest on such debt as it falls due and also to pay and discharge the principal within twenty years. In construing this part of section 12 we held that within the five per cent limit it was lawful for a municipality

to contract debts without providing for a direct annual tax, unless payment of such indebtedness is deferred to a fixed future period and which bears interest. (*Town of Kankakee* v. *McGrew,* 178 Ill. 74; *City of Danville* v. *Danville Water Co.* 180 id. 235.) The case at bar does not fall within the provisions of the section as construed by this court.

Another objection of appellant to the tax in question is, that the city intends to use the light plant to be acquired to furnish lights to private consumers, and that this is an unlawful purpose. The city undoubtedly has the right to acquire a light plant for lighting its streets, and the appropriation, being for the purchase of a light plant, is therefore for a lawful purpose. If the city should use its property in an unlawful manner to the detriment of the appellant it has its remedy, but the objection is immaterial in this proceeding.

The judgment being erroneous as to a part of the tax will be reversed, and judgment will be entered in this court, pursuant to the statute, against the appellant for $23.37, the amount of the legal tax unpaid, and also for costs in this court; and it will be further ordered that so much of the amount deposited by appellant with the collector as may be necessary shall be credited on the judgment rendered by this court.

*Judgment reversed, and judgment entered in this court.*

On petition for a rehearing the following additional opinion was filed:

Per CURIAM: Counsel in their petition for a rehearing say that the court has made a mistake in its computation of the amount that the city of Flora was lawfully indebted on the purchase of the electric light plant when the tax was levied. They say that the amount was $5759.05 instead of $759.05, as stated in the opinion. We do not think so. When the city sold its bonds for $10,000 it applied $5000 of the proceeds in payment of its floating indebtedness and $5000 toward the payment of

the valid part of the indebtedness incurred by the purchase of the electric light plant, which valid part was $5759.05, leaving $759.05, and not $5759.05, as counsel suppose. It cannot be supposed the city issued its bonds to pay an illegal indebtedness, thus rendering them illegal also. The effect was, as stated in the opinion of the court, that all of the $2600 levied to pay on the purchase price of the plant was illegal except $759.05, and the judgment as rendered here is correct.

The petition for rehearing is denied.